UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PHILLIP THOMPSON,

                Plaintiff,

    vs.

SHUTTERSTOCK, INC., HEIDI GARFIELD,
SARA BIRMINGHAM, ANDRE GRAHAM,
and LEIA LEFAY,

                Defendants.

Civil Action No. 23-cv-04155

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

### TABLE OF CONTENTS

**Page**

RELEVANT COMPLAINT ALLEGATIONS ...................................................................1

I.      THE PARTIES.....................................................................................................2

II.     RELEVANT ALLEGATIONS..............................................................................2

      A.     Trip To Tanzania.....................................................................................2

      B.     Questions About Plaintiff's Hair .............................................................2

      C.     Plaintiff's Membership In ShADEs .........................................................2

      D.     Plaintiff's March 2021 Promotion ...........................................................4

      E.     Plaintiff's Requests To Meet With Birmingham .....................................4

      F.     Plaintiff's Dissatisfaction With Shutterstock's Content Policy ..............4

      G.     Plaintiff's Relocation And Remote Work Request ..................................5

      H.     Plaintiff's Resignation ............................................................................6

ARGUMENT .................................................................................................................7

I.      LEGAL STANDARD..........................................................................................7

II.     COUNT I FAILS TO STATE A CLAIM AGAINST ALL DEFENDANTS ..................8

      A.     Plaintiff Fails To State A Claim For National Origin Discrimination...................8

      B.     Plaintiff Fails To State A Race-Based Failure To Promote Claim .........................9

      C.     Plaintiff Fails To State A Claim For Race-Based Pay Discrimination.................10

      D.     Plaintiff Fails To State A Race-Based Hostile Work Environment Claim...........11

      E.     Plaintiff Fails To State A Race-Based Constructive Discharge Claim.................12

      F.     Plaintiff Fails To State A Race Discrimination Claim Against The
            Individual Defendants ..........................................................................15

III.    COUNT II FAILS TO STATE A CLAIM AGAINST ALL DEFENDANTS.................16

      A.     Plaintiff Fails To State A Claim For A Retaliatory Failure To Promote ..............17

      B.     Plaintiff's Remote Work Request Was Not Denied, And Any Decision
            Pertaining To That Request Was Not Retaliatory..................................18

      C.     Plaintiff Cannot Plead A Retaliation Claim Premised On Defendants'
            Unspecified Alleged Failure To "Act Meaningfully"...........................19

      D.     Plaintiff's Post-Resignation Retaliation Claims Fail ...........................19

      E.     Plaintiff Fails To State A Retaliation Claim Against The Individual
            Defendants ...........................................................................................20

IV.    COUNT III FAILS TO STATE A CLAIM AGAINST THE INDIVIDUAL
       DEFENDANTS ...................................................................................................21

V. COUNT IV FAILS TO STATE A CLAIM AGAINST SHUTTERSTOCK ....................23

VI. COUNT V FAILS TO STATE A CLAIM AGAINST THE INDIVIDUAL
DEFENDANTS ........................................................................................................24

CONCLUSION...........................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Antrobus v. N.Y.C. Health & Hosp. Corp.*
   No. 19 Civ. 7449, 2021 WL 964438 (S.D.N.Y. Mar. 15, 2021) ............................................14

*Ardigo v. J. Christopher Cap., LLC*
   No. 12 Civ. 3627, 2013 WL 1195117 (S.D.N.Y. Mar. 25, 2013) .........................................12

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) .........................................................................................................8

*Ayala v. Looks Great Servs., Inc.*
   No. 14-CV-6035, 2016 WL 3541548 (E.D.N.Y. June 23, 2016) ....................................24, 25

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) .........................................................................................................8

*Bernstein v. N.Y.C. Dep't of Educ.*
   No. 19-cv-11816, 2021 WL 4429318 (S.D.N.Y. Sept. 27, 2021) .........................................13

*Bravo v. Established Burger One, LLC*
   No. 12 Civ. 9044, 2013 WL 5549495 (S.D.N.Y. Oct. 8, 2013) ............................................25

*Cadet v. Alliance Nursing Staffing of N.Y., Inc.*
   632 F. Supp. 3d 202 (S.D.N.Y. 2022) ..................................................................................20

*Calcano v. Swarovski N. Am. Ltd.*
   36 F.4th 68 (2d Cir. 2022) ...............................................................................................7

*Cardwell v. Davis Polk & Wardwell LLP*
   No. 1:19-cv-10256, 2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020)...........................11, 12, 16

*Citizens United v. Schneiderman*
   882 F.3d 374 (2d Cir. 2018)...............................................................................................11

*Colon v. Mark-Viverito*
   No. 16-CV-4540, 2018 WL 1565635 (S.D.N.Y. Mar. 26, 2018) .........................................23

*Daniels v. N.Y.C.*
   No. 17 Civ. 9960, 2019 WL 251511 (S.D.N.Y. Jan. 17, 2019).............................................10

*Davis v. City Univ. of N.Y.*
   No. 94 CIV 7277, 1996 WL 243256 (S.D.N.Y. May 9, 1996).................................................9

*Dechbery v. N.Y.C.*
    No. 14-CV-2130, 2017 WL 11683338 (E.D.N.Y. Mar. 31, 2017)..........................................18

*Durand v. Excelsior Care Grp.*
    No. 19-CV-2810, 2020 WL 7246437 (E.D.N.Y. Dec. 9, 2020) ..............................................24

*Eckhart v. Fox News Network, LLC*
    No. 20-CV-5593, 2022 WL 4579121 (S.D.N.Y. Sept. 29, 2022)............................................20

*Faughnan v. Nassau Health Care Corp.*
    No. 2:19-cv-03171, 2021 WL 1566138 (E.D.N.Y. Mar. 18, 2021) .......................................24

*Febrianti v. Worldwide*
    No. 15-CV-0635, 2016 WL 502027 (S.D.N.Y. Feb. 8, 2016)................................................14

*Felton v. Monroe Cmty. Coll.*
    579 F. Supp. 3d 400 (W.D.N.Y. 2022) ................................................................................16

*Fleurentin v. NYC Health & Hosp. Corp.*
    No. 18-CV-05004, 2020 WL 42841 (E.D.N.Y. Jan. 3, 2020) ...............................................10

*Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc.*
    742 F. Supp. 2d 382 (W.D.N.Y. 2010) .................................................................................7

*Friederick v. Passfeed, Inc.*
    No. 21-CV-2066, 2022 WL 992798 (S.D.N.Y. Mar. 31, 2022) ............................................15

*Gallardo v. IEH Corp.*
    No. 21-cv-3257, 2022 WL 4646514 (E.D.N.Y. Oct. 1, 2022) ..............................................19

*Garnett-Bishop v. N.Y. Cmty. Bancorp*
    No. 12-CV-2285, 2014 WL 5822628 (E.D.N.Y. Nov. 6, 2014) ............................................16

*Grimes-Jenkins v. Consol. Edison Co. of N.Y.*
    No. 16 Civ. 4897, 2017 WL 2258374 (S.D.N.Y. May 22, 2017)...........................................18

*Guity v. Uniondale Union Free Sch. Dist.*
    No. CV 15-5693, 2017 WL 9485647 (E.D.N.Y. Feb. 23, 2017)....................................18, 19

*Harrington v. Cnty. of Fulton*
    153 F. Supp. 2d 164 (N.D.N.Y. 2001) .................................................................................14

*Harris v. Office of N.Y. State Comptroller*
    No. 20-CV-8827, 2022 WL 814289 (S.D.N.Y. Mar. 17, 2022).............................................17

*Hollington v. CDM Fed. Programs Corp.*
    No. 22-cv-4940, 2023 WL 2457057 (S.D.N.Y. Mar. 10, 2023)........................................9, 10

*Hughes v. Xerox Corp.*
 37 F. Supp. 3d 629 (W.D.N.Y. 2014) ....................................................................11

*Isbell v. N.Y.C.*
 316 F. Supp. 3d 571 (S.D.N.Y. 2018)....................................................................11

*Johnson v. Schmid*
 750 F. App'x 12 (2d Cir. 2018) ...........................................................................10

*Kalola v. Int'l Bus. Mach. Corp.*
 No. 13 CV 7339, 2015 WL 861718 (S.D.N.Y. Feb. 3, 2015) ................................23

*Keles v. Davalos*
 No. 19-CV-3325, 2022 WL 17495048 (E.D.N.Y. Nov. 23, 2022) ........................11

*Kurian v. Forest Hills Hosp.*
 962 F. Supp. 2d 460 (E.D.N.Y. 2013) ...................................................................21

*Lawrence v. Sol G Atlas Realty Co. Inc.*
 No. 14-CV-3616, 2016 WL 7335612 (E.D.N.Y. Dec. 16, 2016)...........................21

*Lawtone-Bowles v. N.Y.C.*
 No. 17cv8024, 2019 WL 652593 (S.D.N.Y. Feb. 15, 2019) .................................12

*Lebowitz v. N.Y.C. Dep't of Educ.*
 407 F. Supp. 3d 158 (E.D.N.Y. 2017) .....................................................................9

*Lee v. Sony BMG Music Entm't*
 557 F. Supp. 2d 418 (S.D.N.Y. 2008)......................................................................8

*Marquez v. Hoffman*
 No. 18-CV-7315, 2021 WL 1226981 (S.D.N.Y. Apr. 2, 2021) ...........................16

*McNeil v. N.Y. State Office of Substance Alcoholism & Substance Abuse Servs.*
 No. 14-CV-2379, 2017 WL 1194655 (E.D.N.Y. Mar. 31, 2017)...........................20

*Mondelo v. Quinn, Emanual, Urquhart & Sullivan*
 No. 21 Civ. 02512, 2022 WL 524551 (S.D.N.Y. Feb. 22, 2022) .........................23

*Moore v. N.Y.C.*
 No. 15-CV-6600, 2017 WL 35450 (S.D.N.Y. Jan. 3, 2017) .................................21

*Motta v. Global Contract Servs., Inc.*
 No. 15 Civ. 8555, 2016 WL 2642229 (S.D.N.Y. May 4, 2016).....................10, 11

*Murray v. United Parcels Serv., Inc.*
 No. 20-CV-1427, 2022 WL 4468295 (E.D.N.Y. Sept. 25, 2022) .........................22

*Pollock v. Shea*
  568 F. Supp. 3d 500 (S.D.N.Y. 2021) ....................................................................12

*Puchalski v. FM Constr., Inc.*
  No. 18-CV-1596, 2020 WL 672777 (E.D.N.Y. Nov. 16, 2020) .......................24, 25

*Raghavendra v. NLRB*
  No. 08 Civ. 8120, 2009 WL 5908013 (S.D.N.Y. Aug. 27, 2009) ..........................22

*Reid v. Ingerman Smith LLP*
  876 F. Supp. 2d 176 (E.D.N.Y. 2012) ..................................................................22

*Salaam v. Syracuse Model Neighborhood Facility*
  No. 5:11-CV-948, 2012 WL 893487 (N.D.N.Y. Mar. 15, 2012) ...........................20

*Scott-Robinson v. N.Y.C.*
  No. 15-CV-09703, 2016 WL 7378775 (S.D.N.Y. Dec. 15, 2016) ...................18, 19

*Silberman v. Atl. Dialysis Mgmt. Servs., LLC*
  No. 17cv7019, 2018 WL 4335510 (S.D.N.Y. Sept. 11, 2018) ...............................13

*Singhal v. Doughnut Plant*
  No. 20-cv-3295, 2022 WL 976885 (S.D.N.Y. Mar. 31, 2022) ...............................22

*Smolen v. Fisher*
  No. 12 Civ. 1856, 2012 WL 3609089 (S.D.N.Y. Aug. 23, 2012) ............................7

*Sobon v. Horizon Engineering Assoc.*
  No. 5:13-cv-1431, 2014 WL 4889340 (N.D.N.Y. Sept. 30, 2014) .........................14

*Solomon v. Fordham Univ.*
  No. 18 Civ. 4615, 2022 WL 912056 (S.D.N.Y. Mar. 29, 2022) .............................11

*Sosa v. Medstaff, Inc.*
  No. 12 Civ. 8926, 2013 WL 6569913 (S.D.N.Y. Dec. 13, 2013) ...........................22

*Sosa v. N.Y.C. Dep't of Educ.*
  368 F. Supp. 3d 489 (E.D.N.Y. 2019) ..............................................10, 17, 18, 19

*Spires v. MetLife Grp.*
  No. 18-CV-4464, 2019 WL 4464393 (S.D.N.Y. Sept. 18, 2019) .....................12, 14

*Starr v. Sony BMG Music Entm't*
  592 F.3d 314 (2d Cir. 2010) ..................................................................................8

*Tardd v. Brookhaven Nat'l Lab.*
  407 F. Supp. 2d 404 (E.D.N.Y. 2006) ..................................................................15

*Ulrich v. Local Union No. 812*
    425 F. Supp.3d 234 (S.D.N.Y. 2019)........................................................................22

*Warren v. Ultimate Fitness Grp.*
    LLC, No. 19-CV-10315, 2021 WL 4239245 (S.D.N.Y. Sept. 17, 2021) ...............................23

*Williams v. N.Y. State Unified Court Sys. Office of Court Admin.*
    No. 16-CV-2061, 2017 WL 4402662 (S.D.N.Y. Sept. 30, 2017)...........................................21

<u>Statutes</u>

42 U.S.C. § 1981 ("§ 1981")..................................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ...................................................................1, 7

Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), Defendants Shutterstock, Inc. ("Shutterstock"), Heidi Garfield ("Garfield"), Sara Birmingham ("Birmingham"), Andre Graham ("Graham") and Leia LeFay ("LeFay") (the "Individual Defendants," and together with Shutterstock, "Defendants"), by and through their undersigned counsel, submit this Memorandum of Law in Support of their Motion to Dismiss: (i) Counts I and II of the Complaint ("Complaint" or "Compl.") of Plaintiff Phillip Thompson ("Plaintiff") against all Defendants; (ii) Count IV of the Complaint against Shutterstock; and (iii) Counts III and V of the Complaint against the Individual Defendants.

## RELEVANT COMPLAINT ALLEGATIONS

Plaintiff, who is Black, was employed by Shutterstock for approximately four years before he voluntarily resigned. Throughout his employment with Shutterstock, Plaintiff consistently received positive performance reviews, salary raises, and promotions, and was never disciplined. (Compl. ¶¶ 31, 40, 68, 75-77). When Plaintiff raised concerns regarding workplace issues during his employment, they were promptly investigated and addressed. Nevertheless, Plaintiff contends in his Complaint that Defendants discriminated and retaliated against him and committed various wage and hour violations. When stripped of its rhetoric, conclusory allegations, and rank speculation, Plaintiff's Complaint pleads nothing of the sort. Instead, Plaintiff's Complaint appears largely premised on his personal dissatisfaction that his recommendations regarding workplace policies and request to relocate were not blindly adopted or granted, rather than any adverse action connected to his race or alleged protected activity. The core allegations of Plaintiff's Complaint, absent the unsupported embellishment that is characteristic of his pleadings, are summarized herein.

## I.     THE PARTIES

As part of its business, Shutterstock hosts and provides access to a library of stock images, videos, and graphics.  (Compl. ¶ 20).  Plaintiff worked in Shutterstock's customer service department between approximately December 10, 2017 and the date of his voluntary resignation on December 1, 2021.  (Compl. ¶¶ 8, 21, 108).

## II.    RELEVANT ALLEGATIONS

Plaintiff claims that Defendants discriminated and retaliated against him based on his race and national origin and subjected him to various wage and hour violations based on the events alleged below.

### A.     Trip To Tanzania

Plaintiff claims that, in May 2018, he told certain unidentified co-workers that he would be taking a trip to Tanzania, and those co-workers asked if he would be visiting family there. (Compl. ¶ 28).  Plaintiff alleges that it was "clear to him" that his co-workers "assumed he had African family because of his race."  (*Id.*).

### B.     Questions About Plaintiff's Hair

Plaintiff claims that, at unspecified times, unidentified co-workers would ask if his hair was "natural" (Compl. ¶ 29).  He also alleges that unidentified white co-workers touched his hair at unspecified times.  (*Id.*).

### C.     Plaintiff's Membership In ShADEs

Plaintiff alleges that he experienced mistreatment in connection with his membership in a Shutterstock Employee Resource Group ("ERG") designed to address issues facing Black employees at Shutterstock called Shutterstock Afro-Descendants, or "ShADEs," which he joined in May 2019.  (Compl. ¶¶ 32-39, 44-67).  Plaintiff admits that Shutterstock embraced ShADEs' mission and that ShADEs organized a variety of events for Black and non-Black employees.

(Compl. ¶¶ 36-37).  Plaintiff further alleges that unidentified Shutterstock employees approached unidentified members of ShADEs to ask for their help with diversity, equity and inclusion ("DEI")-related projects, including blog posts and videos.  (Compl. ¶ 38).  Plaintiff alleges in conclusory fashion, and only "upon information and belief," that unidentified white employees who were previously assigned these tasks at unspecified times were paid for them, while ShADEs members were not.  (Compl. ¶¶ 39, 46-47).

In June 2020, Plaintiff alleges that ShADEs presented a video panel broadcast to Shutterstock employees called "A Seat at the Table" ("ASAT").  (Compl. ¶ 49).  During the ASAT presentation, Plaintiff claims that ShADEs members described "uncompensated labor combined with racist microaggressions" and "racist interactions" at Shutterstock.  (Compl. ¶¶ 49-51).  Plaintiff describes that ShADEs members received generally positive feedback from their co-workers about the ASAT presentation.  (Compl. ¶ 53).  However, Plaintiff alleges that Garfield, Shutterstock's General Counsel and acting Chief Human Resources Officer ("CHRO") told unidentified ShADEs members at an unspecified time that: (i) the ASAT presentation was "unproductive" and "angry"; and (ii) "if ShADEs work is interfering with one's day-to-day, they ought to get better time management."  (Compl. ¶¶ 55-56).  Plaintiff's Complaint is devoid of any allegation that any member of ShADEs, including him, suffered any adverse action by virtue of their participation in the ASAT presentation.

On or around June 30, 2020, Plaintiff claims that he complained to a Shutterstock Human Resources ("HR") representative, Christina Wang ("Wang"), about "the mental and emotional repercussions of HR's backlash against him and his Black co-workers" following the ASAT presentation.  (Compl. ¶ 61).  Plaintiff contends that Wang took his alleged report seriously and escalated it to senior members of Shutterstock's HR organization, and made  certain of her own

recommendations.  (Compl. ¶¶ 63-67).  Plaintiff claims, but only "upon information and belief," that Wang's recommendations to her superiors were not implemented.  (Compl. ¶ 67).

**D.**     **Plaintiff's March 2021 Promotion**

In March 2021, Plaintiff was promoted to the role of Manager, Contributor Servicing & Emerging Products, which he describes as his "first and only non-lateral promotion."  (Compl. ¶¶ 68-70).  Plaintiff speculates that his promotion was "severely delayed due his race and due to his speaking out about racism and discrimination[.]" (Compl. ¶ 70).  Plaintiff claims that the Vice President of his department, Denise Quaglia ("Quaglia") was promoted more times than he was. (Compl. ¶ 70).  Plaintiff also claims, without any further detail, that his manager, Mike Lucero ("Lucero") and an individual who held the title of "Senior Product Operations Manager" named Alexandra Zusman ("Zusman") were promoted "over" him at an unspecified time to unspecified positions.  (Compl. ¶¶ 40, 71, 75).  At some point after his promotion, Plaintiff began reporting to Graham, a Black man who Plaintiff claims invested him with significant responsibility.  (Compl. ¶¶ 72-73).

**E.**     **Plaintiff's Requests To Meet With Birmingham**

Plaintiff claims that in April and July 2021, he attempted to schedule time to meet with Shutterstock's new CHRO, Birmingham, using an online form.  (Compl. ¶¶ 79, 88).  Plaintiff thereafter contacted Birmingham directly, who told him that the form he submitted in an attempt to contact her "had not been in use for some time."  (Compl. ¶ 89).  Birmingham directed Plaintiff to Laura Ethington ("Ethington"), a HR Coordinator, to arrange a meeting.  (*Id.*).  Plaintiff claims that Ethington never scheduled the meeting requested by Birmingham.  (*Id.*).

**F.**     **Plaintiff's Dissatisfaction With Shutterstock's Content Policy**

In or around April 2021, Shutterstock hired a Black man named Meeckel Beecher ("Beecher") as its new Global Head of DEI.  (Compl. ¶ 78).  In early September 2021, Plaintiff

-4-

claims that he met with Beecher to discuss the ASAT presentation and Shutterstock's policy prohibiting user-posted content that could be deemed offensive in its online image library. (Compl. ¶ 91). Plaintiff alleges that he had complained at unspecified times to Beecher and HR that Shutterstock's content policy needed to be "more closely enforced." (Compl. ¶¶ 93-94). Plaintiff admits that Shutterstock and Beecher responded to these complaints and took down images at his request, but that he personally deemed that response "insufficient." (Compl. ¶¶ 94-96).

### G.   Plaintiff's Relocation And Remote Work Request

In March 2020, Shutterstock closed its offices as a result of the COVID-19 pandemic. (Compl. ¶ 42). In late May 2021, Shutterstock began planning to reopen its offices. (Compl. ¶ 80). Plaintiff claims that he submitted a request to relocate to Georgia and work remotely on a permanent basis, despite the fact that at least two of the teams he supervised did not work remotely. (Compl. ¶¶ 80-82). According to Plaintiff, HR representative Allison Haracopos approved his request. (Compl. ¶ 82). In June 2021, Shutterstock's HR director Margarita Buffel directed Plaintiff to submit a letter to his supervisor, Graham, requesting permission to relocate and work remotely on a permanent basis. (Compl. ¶ 83) Graham directed Plaintiff to the Vice President of Plaintiff's department, Quaglia. (Compl. ¶ 98). Quaglia allegedly told Plaintiff that his position could not be performed remotely on a permanent basis. (Compl. ¶ 99). However, so as not to "lose his talent," Quaglia offered to help Plaintiff search for a different position at Shutterstock that could be performed fully remotely. (Compl. ¶ 99). Plaintiff claims that he did not wish to switch to a new role because he assumed that it would "likely [come with] a decrease in pay" and did not follow up on Quaglia's offer. (*Id.*). Plaintiff "intuited" that he was being "forced" to return to the office as "continued retaliation for speaking out against racism against Shutterstock" and

"so that management could keep an eye on him and prevent him from fraternizing with his Black co-workers." (Compl. ¶ 101).

H.    **Plaintiff's Resignation**

In late September 2021, Plaintiff allegedly told Graham that he was "demoralized" that Shutterstock had, in his opinion, exhibited insufficient progress towards its DEI goals. (Compl. ¶ 102). According to Plaintiff, Graham asked Plaintiff why, if he was so unhappy and nothing was changing, he was still at Shutterstock. (Compl. ¶ 103).

On or about October 20, 2021, Plaintiff allegedly "received screenshots" of unidentified emails that were dated August 2020 from an unidentified individual. (Compl. ¶ 104). According to Plaintiff, those emails contained unspecified complaints to Birmingham and Ethington regarding "the harms that Plaintiff and his Black colleagues at Shutterstock had been experiencing as a result of Shutterstock's refusal to protect their Black employees from being exploited by their white co-workers." (*Id.*). Plaintiff subsequently felt "forced to terminate his employment." (Compl. ¶ 107). On December 1, 2021, Plaintiff voluntarily resigned. (Compl. ¶ 108).

Plaintiff claims that, in or around April 2022, he retained counsel and sent a litigation hold letter to Shutterstock. (Compl. ¶ 113). Plaintiff further alleges that, following receipt of the letter, Graham and another co-worker – Elise Berkowitz ("Berkowitz") – told his former co-workers that "your friends are not your friends" and that Plaintiff had "been spreading lies, stories and rumors about Shutterstock employees," which Plaintiff deemed retaliatory. (Compl. ¶ 114). According to Plaintiff, certain of his former co-workers blocked his phone number and blocked him on social media at some unspecified time. (Compl. ¶ 115).

Against these allegations, Plaintiff asserts the following claims against Defendants: (i) race and national origin discrimination in violation of 42 U.S.C. § 1981 ("§ 1981"), the New York State

Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") against all Defendants ("Count I"); (ii) retaliation in violation of § 1981, the NYSHRL and NYCHRL against all Defendants ("Count II"); (iii) aiding and abetting discrimination and retaliation in violation of § 1981, the NYSHRL and NYCHRL against the Individual Defendants ("Count III"); (iv) violation of the New York State Equal Pay Act ("NYEPA"), New York Labor Law ("NYLL") § 194, against Shutterstock ("Count IV"); and (v) failure to pay wages in violation of the New York Labor Law ("NYLL") against all Defendants ("Count V").

## ARGUMENT

## I.   LEGAL STANDARD

Rule 12(b)(6) allows for the dismissal of a cause of action where the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In reviewing a complaint under Rule 12(b)(6), the court applies a "plausibility standard" guided by "two working principles." *Smolen v. Fisher*, No. 12 Civ. 1856, 2012 WL 3609089, at *2-3 (S.D.N.Y. Aug. 23, 2012).  First, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice to state a claim. *Id.*  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss," and the complaint "must contain enough factual amplification to render a claim plausible."  *Id.; Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc.*, 742 F. Supp. 2d 382, 389 (W.D.N.Y. 2010) (citations omitted).  A reviewing court "need not credit a legal conclusion couched as a factual allegation or a naked assertion devoid of further factual enhancement."  *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (internal citations omitted).

In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief

above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, however, dismissal is appropriate." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (citations omitted).

## II.    COUNT I FAILS TO STATE A CLAIM AGAINST ALL DEFENDANTS

Count I of the Complaint asserts claims against all Defendants for race and national origin discrimination under § 1981, the NYSHRL and NYCHRL. Plaintiff appears to claim that Defendants discriminated against him on the basis of his race (Black) and national origin (unspecified) by: (i) failing to promote him; (ii) paying him less than unidentified white colleagues; (iii) subjecting him to a hostile work environment; and (iv) constructively discharging him. (Compl. ¶¶ 4-5, 39, 47, 70, 118, 121).  For the reasons set forth below, Count I should be dismissed in its entirety.

### A.    Plaintiff Fails To State A Claim For National Origin Discrimination

As a threshold matter, Plaintiff fails to state a claim for national origin discrimination under § 1981 because no such cause of action exists. *Lee v. Sony BMG Music Entm't*, 557 F. Supp. 2d 418, 424 (S.D.N.Y. 2008).

Plaintiff's NYSHRL and NYCHRL national origin discrimination claims fare no better. Importantly, the Complaint fails to state what Plaintiff's national origin actually *is*, let alone articulate any comments or adverse actions relating to it.  Accordingly, each of Plaintiff's national origin discrimination claims in Count I of the Complaint should be dismissed. *Id.  (*dismissing NYSHRL and NYCHRL national origin discrimination claims where plaintiff failed to plead her

national origin or any alleged animus relating to it); *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 176 (E.D.N.Y. 2017) (same).

### B.  Plaintiff Fails To State A Race-Based Failure To Promote Claim

Plaintiff also fails to plausibly allege that he was denied promotions because of his race. To state a failure to promote claim under § 1981, the NYSHRL or NYCHRL, the plaintiff must plead that: (i) he was a member of a protected class; (ii) he applied for and was qualified for a job for which the employer was seeking applicants; (iii) he was rejected despite being qualified under circumstances that give rise to an inference of discrimination; and (iv) after the rejection, the position remained open and the employer continued to seek applicants with his qualifications. *Hollington v. CDM Fed. Programs Corp.*, No. 22-cv-4940, 2023 WL 2457057, at *6 (S.D.N.Y. Mar. 10, 2023). When a plaintiff attempts to demonstrate an inference of discrimination by comparing himself to co-workers outside of his protected class, the plaintiff must plead facts demonstrating that such comparators are "similarly situated in all material respects." *Id.*

Plaintiff's Complaint fails to satisfy any of these elements. Indeed, Plaintiff admits that he *was promoted*, and fails to identify any position that he applied for and was denied. *(*Compl. ¶ 68).[1] The crux of Plaintiff's failure to promote claim appears to be his subjective belief that his promotion was "severely delayed" because of his race. (*Id.* at ¶ 69). However, Plaintiff fails to state any facts supporting that conclusion, including any description of his application process, the length of the alleged delay, or how he was adversely impacted by the alleged delay. *See Davis v. City Univ. of N.Y.*, No. 94 CIV 7277, 1996 WL 243256, at *8-9 (S.D.N.Y. May 9, 1996).

Moreover, Plaintiff articulates no facts connecting his allegedly delayed promotion to his race. While Plaintiff attempts to manufacture such a connection by comparing himself to Quaglia,

---

[1] While Plaintiff characterizes certain of his promotions as "lateral promotions," that description is nonsensical. (Compl. ¶ 69).

Lucero, and Zussman, these efforts cannot save his failure to promote claim from dismissal for several reasons.  (Compl. ¶¶ 40, 70-71, 75).  First, Plaintiff does not specify Lucero or Zusman's race. *Fleurentin v. NYC Health & Hosp. Corp.*, No. 18-CV-05004, 2020 WL 42841, at *7 (E.D.N.Y. Jan. 3, 2020).  Second, Plaintiff fails to supply any facts through which the Court may infer that Plaintiff and any of his purported comparators were similarly situated; Quaglia and Lucero were Plaintiff's managers, and Zusman held an entirely different role. *Hollington*, 2023 WL 2457057, at *6; *see also, e.g.*, *Johnson v. Schmid*, 750 F. App'x 12, 17 (2d Cir. 2018).  Finally, Plaintiff's Complaint is devoid of any allegations regarding his comparators' qualifications as compared to his own, any description of their job responsibilities, or even any positions for which they actually competed with Plaintiff. *Hollington*, 2023 WL 2457057, at *6; *Fleurentin*, 2020 WL 42841, at *7.  Instead, Plaintiff simply pleads in conclusory fashion that others were promoted faster than him, which is insufficient to state a race-based failure to promote claim. *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 499 (E.D.N.Y. 2019); *Daniels v. N.Y.C.*, No. 17 Civ. 9960, 2019 WL 251511, at *5 (S.D.N.Y. Jan. 17, 2019).

###    C.    Plaintiff Fails To State A Claim For Race-Based Pay Discrimination

Likewise, Plaintiff fails to state a cause of action for race-based pay discrimination.  To state such a claim, a plaintiff must plead: (i) membership in a protected class; (ii) payment "less than similarly situated non-members of the protected class"; and (iii) discriminatory animus. *Motta v. Global Contract Servs., Inc.*, No. 15 Civ. 8555, 2016 WL 2642229, at *2-3 (S.D.N.Y. May 4, 2016).  Plaintiff's pay discrimination claim is limited to his "upon information and belief" allegation that he was not paid to perform DEI-related tasks, while unidentified white Shutterstock employees were compensated for them at some point in the past.  (Compl. ¶¶ 39, 46-47).  However, to survive a motion to dismiss, a plaintiff must do more than broadly allege that he was paid less

than unidentified employees outside of his protected class for equal work.[2] *Solomon v. Fordham Univ.*, No. 18 Civ. 4615, 2022 WL 912056, at *4 (S.D.N.Y. Mar. 29, 2022) (granting motion to dismiss where complaint lacked description of similarly-situated comparators); *Motta*, 2016 WL 2642229, at *2-3 (dismissing pay discrimination in the absence of any identified comparator or showing that such comparator was similarly situated); *Hughes v. Xerox Corp.*, 37 F. Supp. 3d 629, 644-45 (W.D.N.Y. 2014) (same). Accordingly, this branch of Count I must be dismissed.

**D.**    **Plaintiff Fails To State A Race-Based Hostile Work Environment Claim**

Plaintiff's Complaint also fails to state a claim for a race-based hostile work environment. To plead a hostile work environment claim under § 1981 and the NYSHRL, the plaintiff must plead specific facts showing that the workplace "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Isbell v. N.Y.C.*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018). Under the NYCHRL, a plaintiff "need not establish severe and pervasive conduct to establish liability," but must plead that "the behavior complained of is worse than petty slights and trivial inconveniences," and also must articulate facts "tending to show that the actions that created the hostile work environment were taken against him because of a prohibited factor." *Keles v. Davalos*, No. 19-CV-3325, 2022 WL 17495048, at *22 (E.D.N.Y. Nov. 23, 2022) (citations omitted). Under any of the above statutes, an actionable hostile work environment claim cannot be premised on discrete adverse employment decisions. *Cardwell v. Davis Polk & Wardwell LLP*, No. 1:19-cv-10256, 2020 WL 6274826, at *27 (S.D.N.Y. Oct. 24, 2020) (citations omitted) ("[A]llegations of discrete, adverse employment decisions concerning promotions, discipline, [and] appraisal . . . are insufficient to state a claim for a hostile work environment.").

---

[2] Moreover, "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018).

Here, Plaintiff baldly alleges that he was subjected to a hostile work environment in a handful of paragraphs in his Complaint.  (Compl. ¶¶ 5, 8, 107, 118, 121).  However, the bulk of Plaintiff's allegations are premised on discrete actions that cannot form the basis of a hostile work environment claim. *Cardwell*, 2020 WL 6274826, at *27.  At most, Plaintiff appears to premise his hostile work environment claim on his vague allegation that, on certain undated occasions, unidentified co-workers of unidentified races asked if his hair was "natural," and that unidentified white co-workers touched his hair on unspecified occasions.  (Compl. ¶ 29).  These allegations fail to plausibly allege a hostile work environment claim.  Plaintiff does not allege that his co-workers' comments were made with racial animus or that they altered the terms and conditions of his employment.  Even if such alleged comments could somehow be deemed insensitive, they constitute precisely the kind of "petty slights and trivial inconveniences" that cannot sustain a hostile work environment claim. *See Lawtone-Bowles v. N.Y.C.*, No. 17cv8024, 2019 WL 652593, at *3-4 (S.D.N.Y. Feb. 15, 2019) (sporadic insensitive comments failed to state a hostile work environment claim under the NYSHRL or NYCHRL); *Ardigo v. J. Christopher Cap., LLC*, No. 12 Civ. 3627, 2013 WL 1195117, at *4 (S.D.N.Y. Mar. 25, 2013) (same).

### E.      Plaintiff Fails To State A Race-Based Constructive Discharge Claim

Plaintiff's attempt to characterize his voluntary resignation as a constructive discharge also fails.  To state a claim for constructive discharge under § 1981, the NYSHRL or the NYCHRL, the plaintiff must plead facts demonstrating that his employer "deliberately created working conditions so intolerable that a reasonable person in the plaintiff's position would have felt compelled to resign." *Pollock v. Shea*, 568 F. Supp. 3d 500, 513 (S.D.N.Y. 2021) (citations omitted); *Spires v. MetLife Grp.*, No. 18-CV-4464, 2019 WL 4464393, at *9-10 (S.D.N.Y. Sept. 18, 2019).  Because the standard for pleading a constructive discharge claim is more stringent than

a hostile work environment claim, a plaintiff's failure to state a hostile work environment claim is fatal to his efforts to plead a constructive discharge claim. *Bernstein v. N.Y.C. Dep't of Educ.*, No. 19-cv-11816, 2021 WL 4429318, at \*11 (S.D.N.Y. Sept. 27, 2021).  Here, Plaintiff has failed to plead a hostile work environment claim, and his constructive discharge claim must accordingly be dismissed as well. *Id.*

Assuming *arguendo* that Plaintiff could plead a hostile work environment claim (and he has not), the Complaint still fails to articulate an actionable constructive discharge claim.  The Complaint is devoid of any allegations even remotely describing an "intolerable" work environment; indeed, Plaintiff admits that he was given raises, promotions, and positive feedback, and does not plead that he encountered the kind of daily harassment necessary to sustain a constructive discharge claim.  Instead, Plaintiff's constructive discharge claim is premised on a vaguely-pled "atmosphere of adverse employment actions" associated with different (or unidentified) decision-makers and a speculative connection to his race, all of which are insufficient to articulate a constructive discharge claim. *Bernstein*, 2021 WL 4429318, at \*12 (plaintiff's "attempts to stitch together what otherwise are an unrelated set of acts, prompted by separate conduct by Plaintiff" over time failed to plausibly plead that employer intentionally created intolerable working conditions); *Silberman v. Atl. Dialysis Mgmt. Servs., LLC*, No. 17cv7019, 2018 WL 4335510, at \*4-5 (S.D.N.Y. Sept. 11, 2018).

At best, Plaintiff claims that he was "forced" to resign from Shutterstock because: (i) he was having "difficulty being promoted" despite the "excessive work he was being made to perform"; and (ii)  he felt "demoralized" by what he perceived as Shutterstock's refusal to "act" in response to his alleged complaints.  (Compl. ¶ 107).[3]  Neither allegation sustains a constructive

---

[3] The "excessive work" referenced here appears to be the increased responsibility that Plaintiff claims he received following his promotion in March 2021.  (Compl. ¶¶ 73, 101).

discharge claim.  With respect to Plaintiff's alleged "difficulty being promoted," Plaintiff pleads

no facts to render this allegation plausible; indeed, Plaintiff admits that he was promoted and, as

set forth above, does not articulate an actionable failure to promote claim.  In any event, "denial

of promotion by itself, even for discriminatory reasons, does not constitute an intolerable work

atmosphere amounting to a constructive discharge."  *Spires*, 2019 WL 4464393, at *10.  Likewise,

an increased workload, especially when associated with a promotion, does not create "intolerable"

working conditions. *Sobon v. Horizon Engineering Assoc.*, No. 5:13-cv-1431, 2014 WL 4889340,

at *8-9 (N.D.N.Y. Sept. 30, 2014).

   Nor can Plaintiff's claim that Shutterstock's refusal to "act" in response to his alleged

complaints state a constructive discharge claim.  According to the Complaint, each and every

alleged complaint that Plaintiff made during his employment – whether with respect to the ASAT

presentation, DEI-based work or Shutterstock's content policy – was investigated and addressed

by Shutterstock's HR team or other members of management, such as Beecher. (Compl. ¶¶ 63-67,

91, 94-96).  While Plaintiff apparently deemed Shutterstock's responses "insufficient" (Compl. ¶¶

94-96), his personal dissatisfaction with the Company's decision not to adopt all of his

recommendations at various times over a multi-year period falls well short of showing the

deliberate creation of intolerable working conditions.  Accordingly, Plaintiff's conclusory and

unsupported constructive discharge claim fails. *See Antrobus v. N.Y.C. Health & Hosp. Corp.*, No.

19 Civ. 7449, 2021 WL 964438, at *15 (S.D.N.Y. Mar. 15, 2021) (allegations of "demoralizing"

working conditions could not sustain constructive discharge claim); *Febrianti v. Worldwide*, No.

15-CV-0635, 2016 WL 502027, at *6 (S.D.N.Y. Feb. 8, 2016) ("[Plaintiff] may have been

dissatisfied with her job and on poor terms with her colleagues, but that is insufficient to state a

claim of constructive discharge"); *Harrington v. Cnty. of Fulton*, 153 F. Supp. 2d 164, 171

(N.D.N.Y. 2001) (constructive discharge claim failed where harassment complaint was promptly investigated).

**F.    <u>Plaintiff Fails To State A Race Discrimination Claim Against The Individual Defendants</u>**

Finally, Count I fails to state a cause of action against any of the Individual Defendants. To state a claim for individual liability under § 1981, the plaintiff "must demonstrate some affirmative link to causally connect the actor with the discriminatory action," specifically pleading the actor's "personal involvement." *Tardd v. Brookhaven Nat'l Lab.*, 407 F. Supp. 2d 404, 411-12 (E.D.N.Y. 2006) (citations omitted). Likewise, under the NYSHRL and NYCHRL, "individual liability is limited to cases where an individual defendant actually participates in the conduct giving rise to the plaintiff's [discrimination] claim." *Friederick v. Passfeed, Inc.*, No. 21-CV-2066, 2022 WL 992798, at *9 (S.D.N.Y. Mar. 31, 2022) (citations omitted).

Plaintiff fails to meet this standard with respect to any of the Individual Defendants. Plaintiff's allegations regarding the Individual Defendants' conduct are limited to his claims that: (i) on one occasion, "upon information and belief," Garfield criticized the ASAT presentation, apparently outside of Plaintiff's presence (Compl. ¶¶ 55-56)[4]; (ii) "upon information and belief," Birmingham did not adopt all of Wang's recommendations, and Birmingham's assistant failed to arrange a meeting for her and Plaintiff (Compl. ¶¶ 63, 79, 88-90); (iii) Graham (who is Black) asked Plaintiff why he was still at Shutterstock if he was unhappy and criticized him following Shutterstock's receipt of his post-resignation litigation hold letter (Compl. 73, 102-03, 114); and (iv) LeFay allegedly witnessed Garfield's criticism of the ASAT presentation and, "upon information and belief," was "nominally in charge of Shutterstock's DEI efforts" prior to

_____

[4] Plaintiff characterizes this alleged criticism, which he apparently did not witness, as retaliatory, not discriminatory (though again, only "upon information and belief"). (Compl. ¶ 58).

Beecher's hire (Compl. ¶¶ 47, 57).   Plaintiff does not allege that any of the Individual Defendants: (i) were decisionmakers with respect to his promotion(s) or pay; (ii) made any comments or engaged in any conduct that could give rise to a hostile work environment claim; (iii) played any role that allegedly created an "intolerable" working environment leading to his voluntary resignation; or (iv) otherwise participated in any of the conduct that he claims supports his race discrimination claims.   Plaintiff also fails to plead that any of the conduct attributed to the Individual Defendants was the product of race-based discriminatory animus.   As a result, Plaintiff has failed to plead that any of the Individual Defendants may be held individually liable for discrimination under § 1981, the NYSHRL or NYCHRL, and Count I must be dismissed against them on this basis. *See Felton v. Monroe Cmty. Coll.*, 579 F. Supp. 3d 400, 411-12 (W.D.N.Y. 2022); *Marquez v. Hoffman*, No. 18-CV-7315, 2021 WL 1226981, at \*8-11 (S.D.N.Y. Apr. 2, 2021); *Cardwell*, 2020 WL 6274826, at \*22-26; *Garnett-Bishop v. N.Y. Cmty. Bancorp*, No. 12-CV-2285, 2014 WL 5822628, at \*19-21 (E.D.N.Y. Nov. 6, 2014).

## III.   COUNT II FAILS TO STATE A CLAIM AGAINST ALL DEFENDANTS

Count II of Plaintiff's Complaint asserts claims against all Defendants for retaliation under § 1981, the NYSHRL and NYCHRL.   Plaintiff appears to allege that he engaged in protected activity when he: (i) participated in the ASAT presentation in June 2020 (Compl. ¶¶ 48-52); (ii) complained to Wang in June 2020 (Compl. ¶ 61); and (iii) discussed the ASAT presentation and his criticisms of Shutterstock's content policy with Beecher in September 2021 (Compl. ¶ 91). Plaintiff further alleges that Defendants retaliated against him by: (i) failing to promote him; (ii) denying his remote work request in September 2021; (iii) refusing to act "meaningfully" in

response to his complaint to HR; and (iv) making statements about him following his resignation. (Compl. ¶¶ 4, 113-15, 130).[5]

To state a retaliation claim under § 1981 and the NYSHRL, the plaintiff must plead: (i) participation in a protected activity; (ii) that the defendant knew of the protected activity; (iii) an adverse employment action; and (iv) a causal connection between the protected activity and the adverse employment action. *Harris v. Office of N.Y. State Comptroller*, No. 20-CV-8827, 2022 WL 814289, at *17 (S.D.N.Y. Mar. 17, 2022); *Sosa*, 368 F. Supp. 3d at 516-17. The standard for pleading a retaliation claim under the NYCHRL is the same, "except that the plaintiff need not prove any 'adverse' employment action; instead, he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Harris*, 2022 WL 814289, at *19 (citations omitted). Plaintiff's Complaint does not meet these standards, and Count II should be dismissed in its entirety.

### A.     Plaintiff Fails To State A Claim For A Retaliatory Failure To Promote

Plaintiff's retaliatory failure to promote claim fails for at least two salient reasons. First, as set forth above, Plaintiff has failed to plead a failure to promote claim. Even if Plaintiff had pled such a claim, the Complaint is devoid of any articulable nexus between any of Plaintiff's complaints in July 2020 and his allegedly "severely delayed" March 2021 promotion. (Compl. ¶ 70). Instead, Plaintiff simply contends that "it is clear" that his promotion was delayed because he "[spoke] out about racism and discrimination" at Shutterstock. (*Id.*). Such naked and conclusory allegations do not demonstrate an adverse employment action and cannot plausibly allege a claim for retaliation under any relevant legal standard. *Sosa*, 368 F. Supp. 3d at  526;

---

[5] While Plaintiff also vaguely alleges that he was subjected to a retaliatory hostile work environment (Compl. ¶ 130), he supplies no facts whatsoever that support this claim.  In any event, as set forth above, Plaintiff has failed to plead a hostile work environment claim.

*Grimes-Jenkins v. Consol. Edison Co. of N.Y.*, No. 16 Civ. 4897, 2017 WL 2258374, at *11 (S.D.N.Y. May 22, 2017); *Dechbery v. N.Y.C.*, No. 14-CV-2130, 2017 WL 11683338, at *9 (E.D.N.Y. Mar. 31, 2017).

**B.      Plaintiff's Remote Work Request Was Not Denied, And Any Decision Pertaining To That Request Was Not Retaliatory**

Likewise, Plaintiff has failed to plead that Shutterstock's response to his request to work remotely was retaliatory. Contrary to Plaintiff's general characterizations in the Complaint, his specific allegations show that his request was not "denied." Indeed, Plaintiff admits that Quaglia offered to help him identify a position that could be performed remotely, and that he simply assumed that the unidentified remote role would "likely [come with] a decrease in pay" and did not follow up. (Compl. ¶ 99). To plead an adverse action, the plaintiff must demonstrate that he suffered a "materially adverse change in the terms and conditions of employment" that is more than "a mere inconvenience or alteration of job responsibilities." *Dechbery*, 2017 WL 11683338, at *5. Plaintiff's disappointment with the fact that he could not move to Georgia and work remotely while keeping precisely the role he wanted does not establish an adverse action, and Plaintiff also has not pled that it in any way deterred him from engaging in future protected activity. *See Sosa*, 368 F. Supp. 3d at 495; *Scott-Robinson v. N.Y.C.*, No. 15-CV-09703, 2016 WL 7378775, at *5 (S.D.N.Y. Dec. 15, 2016) ("An employee's displeasure at a personnel action cannot, standing alone, render it materially adverse.") (citations omitted). Likewise, Plaintiff has failed to plead any facts alleging that Quaglia's decision was the product of retaliatory animus or otherwise connected to his purported complaints. *Guity v. Uniondale Union Free Sch. Dist.*, No. CV 15-5693, 2017 WL 9485647, at *21-*25 (E.D.N.Y. Feb. 23, 2017) ("Although some of the Defendants' actions, in Plaintiff's view, were unreasonable, unfair or even untrue . . . without any showing of retaliatory motive, they do not support Plaintiff's retaliation claim.") (citations

-18-

omitted); *see also Gallardo v. IEH Corp.*, No. 21-cv-3257, 2022 WL 4646514, at *6 (E.D.N.Y. Oct. 1, 2022).[6]  Accordingly, Plaintiff has not pled that Shutterstock's response to his request to work remotely was retaliatory.

### C.      Plaintiff Cannot Plead A Retaliation Claim Premised On Defendants' Unspecified Alleged Failure To "Act Meaningfully"

Similarly, Plaintiff's vague claim that Defendants refused to "act meaningfully" in response to his alleged complaints fails to state a retaliation claim.  (Compl. ¶ 4).  Plaintiff fails to describe how this "failure" in any way impacted him, nor could he.  Indeed, Plaintiff's Complaint is clear that Shutterstock or its representatives investigated and addressed each of his alleged complaints, and that he was promoted and received positive performance reviews after he made them. (Compl. ¶¶ 63, 68, 75-77, 91-92, 94, 96).  Plaintiff's subjective belief that Defendants' actions were insufficiently "meaningful" falls woefully short of his requirement to plead that he suffered a materially adverse action or was deterred from engaging in future protected activity. *Sosa*, 368 F. Supp. 3d at 495; *Scott-Robinson*, 2016 WL 7378775, at *5. Moreover, Plaintiff again fails to articulate any causal connection between Defendants' undated refusal to "act meaningfully" and his complaints. *Guity*, 2017 WL 9485647, at *21-*25.  As a result, Plaintiff cannot sustain his retaliation claim on this basis either.

### D.      Plaintiff's Post-Resignation Retaliation Claims Fail

Plaintiff also fails to plead a retaliation claim based on Graham and Berkowitz's alleged comments to his former co-workers following receipt of his post-resignation litigation hold letter. (Compl. ¶¶ 113-115).  While post-termination actions may form the basis of a § 1981 retaliation

---

[6] At most, Plaintiff baldly alleges that unidentified white employees in his department had been approved to work remotely on a permanent basis.  (Compl. ¶ 81).  This claim lends no support to Plaintiff's retaliation claim in the absence of any allegations describing whether such employees were similarly situated to Plaintiff, let alone whether they had previously engaged in protected activity.  It is also belied by Plaintiff's allegation that Graham, who is Black, worked remotely from Florida and Virginia "at the time."  (Compl. ¶ 83).

claim, the plaintiff must plead "blacklisting or interfering with future employment opportunities," not just "trivial harms." *Cadet v. Alliance Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202, 224 (S.D.N.Y. 2022).  Here, the only "harm" Plaintiff claims to have suffered by virtue of Graham and Berkowitz's purported comments is his unidentified former co-workers' alleged undated decisions to block his phone number and social media accounts.  (Compl. ¶ 115).  This is the essence of a "trivial harm," and Plaintiff pleads no facts even tending to show interference with his future employment opportunities.  As a result, Plaintiff's § 1981 post-termination retaliation claim fails. *Cadet*, 632 F. Supp. 3d at 224 (dismissing post-termination § 1981 retaliation claim where plaintiff pled only trivial harm as a result of alleged retaliation).

Under the NYSHRL and NYCHRL, "retaliation claims are confined to the employment context, or at the very least, to situations where the parties had an ongoing economic relationship." *Eckhart v. Fox News Network, LLC*, No. 20-CV-5593, 2022 WL 4579121, at *2 (S.D.N.Y. Sept. 29, 2022).  Here, Plaintiff fails to plead that he had *any* relationship with Defendants after he resigned from Shutterstock, let alone an ongoing economic relationship.  This fact alone is fatal to Plaintiff's claim. *Id.*  In any event, as in the § 1981 context, post-termination retaliation claims under the NYSHRL and NYCHRL are not cognizable in the absence of "blacklisting" or other conduct that actually interferes with the plaintiff's future employment opportunities. *See Salaam v. Syracuse Model Neighborhood Facility*, No. 5:11-CV-948, 2012 WL 893487, at *3 (N.D.N.Y. Mar. 15, 2012).  Accordingly, this branch of Count II must be dismissed as well.

E.   **Plaintiff Fails To State A Retaliation Claim Against The Individual Defendants**

Lastly, Plaintiff fails to state a retaliation claim against the Individual Defendants.  As in the discrimination context, Plaintiff must show that the Individual Defendants were personally involved in the retaliatory acts taken against him in order to assert claims against them. *See McNeil*

-20-

*v. N.Y. State Office of Substance Alcoholism & Substance Abuse Servs.*, No. 14-CV-2379, 2017 WL 1194655, at \*8 (E.D.N.Y. Mar. 31, 2017); *Lawrence v. Sol G Atlas Realty Co. Inc.*, No. 14-CV-3616, 2016 WL 7335612, at \*5 (E.D.N.Y. Dec. 16, 2016).  Even if Plaintiff could make out a colorable retaliation claim based on any of the allegations above (and he cannot), he does not plead that any of the Individual Defendants were decisionmakers with respect to, or otherwise personally involved in, the actions that he has characterized as adverse.[7]  Nor has Plaintiff pled any facts sufficient to allege that the Individual Defendants took any action motivated by retaliatory animus. Accordingly, Count II should be dismissed against the Individual Defendants in its entirety. *See Williams v. N.Y. State Unified Court Sys. Office of Court Admin.*,  No. 16-CV-2061, 2017 WL 4402662, at \*9 (S.D.N.Y. Sept. 30, 2017) *Moore v. N.Y.C.*, No. 15-CV-6600, 2017 WL 35450, at \*23-25 (S.D.N.Y. Jan. 3, 2017); *Lawrence*, 2016 WL 7335612, at \*5.

## IV.   COUNT III FAILS TO STATE A CLAIM AGAINST THE INDIVIDUAL DEFENDANTS

Count III of Plaintiff's Complaint asserts claims for aiding and abetting discrimination and retaliation under § 1981, the NYSHRL and NYCHRL against the Individual Defendants. Plaintiff's aiding and abetting allegations are limited to a recitation of the elements of an aiding and abetting cause of action and the conclusory claim that the Individual Defendants subjected him to discrimination, permitted discrimination to occur, failed to investigate discrimination, and created a hostile work environment.  (Compl. ¶ 139).  For the reasons set forth below, Count III must be dismissed in its entirety.

---

[7] At most, Plaintiff claims that, "upon information and belief," Garfield criticized the ASAT presentation outside his presence on one occasion.  (Compl. ¶¶ 55-56).  Mere criticism, without more, is not an adverse action. *See Kurian v. Forest Hills Hosp.*, 962 F. Supp. 2d 460, 470 (E.D.N.Y. 2013).  Nor did Garfield's purported comments deter Plaintiff from engaging in protected activity; by his own account, he filed a complaint with Wang shortly thereafter.  (Compl. ¶ 61).

Plaintiff's § 1981 aiding and abetting claim must be dismissed out of hand because § 1981 does not recognize aiding and abetting liability. *Raghavendra v. NLRB*, No. 08 Civ. 8120, 2009 WL 5908013, at *22 (S.D.N.Y. Aug. 27, 2009).

Plaintiff's remaining aiding and abetting claims under the NYSHRL and NYCHRL fail for at least three salient reasons.  First, for the reasons set forth above, Plaintiff fails to state a cause of action for discrimination or retaliation under the NYSHRL and NYCHRL in Counts I and II. "Aiding and abetting is only a viable theory where an underlying violation has taken place," and Plaintiff has plausibly alleged no such violation here. *Ulrich v. Local Union No. 812*, 425 F. Supp.3d 234, 246 (S.D.N.Y. 2019); *Murray v. United Parcels Serv., Inc.*, No. 20-CV-1427, 2022 WL 4468295, at *22 (E.D.N.Y. Sept. 25, 2022).

Second, Plaintiff fails to state an aiding and abetting claim because such claim is duplicative of his NYSHRL and NYCHRL claims against the Individual Defendants in Counts I and II.  Individuals "may not be held liable merely for aiding and abetting [their] own discriminatory conduct" under the NYSHRL and NYCHRL. *Singhal v. Doughnut Plant*, No. 20-cv-3295, 2022 WL 976885, at *5 (S.D.N.Y. Mar. 31, 2022).  Stated simply, Plaintiff cannot have it both ways; he cannot claim that the Individual Defendants actively discriminated and retaliated against him on the one hand, then aided and abetted their own conduct on the other. *Id.*; *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 186-87 (E.D.N.Y. 2012).

Third, assuming *arguendo* that Count III could overcome the aforementioned procedural hurdles, Plaintiff fails to plead a cause of action.  To state an aiding and abetting claim under the NYSHRL or NYCHRL, the plaintiff must plead that the defendant "*actually participated* in the conduct giving rise to the claim." *Sosa v. Medstaff, Inc.*, No. 12 Civ. 8926, 2013 WL 6569913, at *9 (S.D.N.Y. Dec. 13, 2013) (emphasis added).  As set forth above, Plaintiff fails to plead that any

of the Individual Defendants were decisionmakers with respect to, or otherwise played a role in, the discriminatory and/or retaliatory acts alleged in the Complaint. *Colon v. Mark-Viverito*, No. 16-CV-4540, 2018 WL 1565635, at *9 (S.D.N.Y. Mar. 26, 2018) (dismissing aiding and abetting claims in the absence of defendant's participation in underlying discrimination); *Kalola v. Int'l Bus. Mach. Corp.*, No. 13 CV 7339, 2015 WL 861718, at *11 (S.D.N.Y. Feb. 3, 2015) (same). While Plaintiff alleges in conclusory fashion that the Individual Defendants otherwise "permitted discrimination to occur" or "failed to investigate discrimination," he does not plead any facts plausibly supporting this contention, and these allegations do not support an aiding and abetting claim in any event. *See Mondelo v. Quinn, Emanual, Urquhart & Sullivan*, No. 21 Civ. 02512, 2022 WL 524551, at *14 (S.D.N.Y. Feb. 22, 2022) ("Failing to respond to others' violations of the NYSHRL and NYCHRL, does not, without more, support aiding and abetting liability . . . [and] aiding and abetting liability does not attach in this Circuit for failing to investigate a claim of discrimination") (citations omitted); *Warren v. Ultimate Fitness Grp., LLC*, No. 19-CV-10315, 2021 WL 4239245, at *6 (S.D.N.Y. Sept. 17, 2021) (alleged failure to take remedial action or address the primary violation does not give rise to aiding and abetting liability) (collecting cases); *Kalola*, 2015 WL 861718, at *11 ("[I]ndividuals are not liable under the Human Rights Law for failing adequately to investigate a claim of discrimination."). Accordingly, Count III must be dismissed as well.

## V.    COUNT IV FAILS TO STATE A CLAIM AGAINST SHUTTERSTOCK

Count IV of Plaintiff's Complaint asserts a claim for violation of the NYEPA against Shutterstock. As in Count I, Plaintiff's allegations in support of this claim are limited to his claim, "upon information and belief," that he was not paid to perform DEI-related tasks while unidentified white Shutterstock employees were at some point in the past. (Compl. ¶¶ 39, 46-47, 143). Such

conclusory and formulaic allegations are insufficient to state a NYEPA claim.  New York courts routinely dismiss NYEPA claims in the absence of identified comparators or "any facts describing the job duties, responsibilities, skill and effort required to execute [the work], or the conditions under which the work was performed." *Durand v. Excelsior Care Grp.*, No. 19-CV-2810, 2020 WL 7246437, at *1, *4 (E.D.N.Y. Dec. 9, 2020) (reliance on "broad generalizations" of disparate pay cannot suffice to survive a motion to dismiss); *Faughnan v. Nassau Health Care Corp.*, No. 2:19-cv-03171, 2021 WL 1566138, at *1, *7-8 (E.D.N.Y. Mar. 18, 2021) ("[T]he law is clear that a district court has the authority to dismiss a [NYEPA] claim based on the pleadings where a complaint lacks specific facts sufficient to identify a valid comparator.").  Because Plaintiff's Complaint is devoid of any allegations necessary to sustain a NYEPA claim, Count IV must be dismissed.

## VI.    COUNT V FAILS TO STATE A CLAIM AGAINST THE INDIVIDUAL DEFENDANTS

Count V of Plaintiff's Complaint asserts a claim for unpaid wages under the NYLL against all Defendants.  Plaintiff claims that Defendants violated the NYLL by failing to pay him for "DEI-related tasks or additional work assigned to him as a ShADEs member."  (Compl. ¶ 148).  This count fails to state a cause of action against the Individual Defendants.

Only "employers" may be held liable for NYLL violations. *Ayala v. Looks Great Servs., Inc.*, No. 14-CV-6035, 2016 WL 3541548, at *5 (E.D.N.Y. June 23, 2016).  To determine whether an individual is an "employer," courts in the Second Circuit apply an "economic reality" test. *Id.* This test directs courts to consider whether the individual: (i) had the power to hire and fire the employee; (ii) supervised and controlled employee work schedules or conditions of employment; (iii) determined the rate and method of payment; and (iv) maintained employment records. *Puchalski v. FM Constr., Inc.*, No. 18-CV-1596, 2020 WL 672777, at *7 (E.D.N.Y. Nov. 16,

2020).   However, "a party cannot simply parrot the elements of the economic reality test" to establish that an individual is an "employer" under the NYLL. *Id.*; *Ayala*, 2016 WL 3541548, at *7 ("[T]he mere recitation that an individual defendant satisfies the elements of the economic reality test, without pleading any factual allegations supporting that claim, is similar to a legal conclusion that does not raise a right to relief beyond a speculative level.") (citations omitted); *Bravo v. Established Burger One, LLC*, No. 12 Civ. 9044, 2013 WL 5549495, at *7 (S.D.N.Y. Oct. 8, 2013) ("Mere boilerplate allegations that an individual meets the various prongs of the economic reality test are insufficient to survive a motion to dismiss.") (citations omitted).

Here, Plaintiff pleads no facts even tending to show that any of the Individual Defendants satisfy any element of the economic reality test beyond reciting that each of them was "Plaintiff's employer" with "the ability to affect the terms and conditions of [his] employment." (Compl. ¶¶ 12-19).   This falls well short of the necessary standard to plead a NYLL claim against the Individual Defendants. *Puchalski*, 2020 WL 672777, at *7; *Ayala*, 2016 WL 3541548, at *7; *Bravo*, 2013 WL 5549495, at *7.   Accordingly, Count V Should be dismissed against them.

## CONCLUSION

For the above reasons, Defendants respectfully requests that the Court grant their motion to dismiss and to grant such other and further relief as this Court deems just and proper.

Dated: New York, New York           **SHEPPARD, MULLIN, RICHTER & HAMPTON** LLP
      September 15, 2023

By:    */s/ Jonathan Stoler*

Jonathan Stoler
Lindsay C. Stone
30 Rockefeller Plaza
New York, New York 10112
Tel.:  (212) 653-8700
Fax:  (212) 653-8701
jstoler@sheppardmullin.com
lstone@sheppardmullin.com
*Attorneys for Defendants Shutterstock, Inc., Heidi
Garfield, Sara Birmingham, Andre Graham, and Leia
LeFay*