UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILLIP THOMPSON,

                              Plaintiff,

              -against-

SHUTTERSTOCK, INC., HEIDI GARFIELD,
SARA BIRMINGHAM, ANDRE GRAHAM,
and LEIA LEFAY,

                              Defendants.

23-CV-4155 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff, a Black male, sues his former employer (and individual employees thereof) for racial discrimination and retaliation. After Plaintiff participated in an employee resource group panel criticizing the racial climate at the company, he alleges that he was passed over for promotion, saddled with an excessive workload, tasked with unpaid diversity, equity and inclusion work, and that his approval to work remotely was rescinded. Plaintiff paints these incidents as part of a larger culture of racial hostility in which he suffered racist microaggressions from coworkers, received dismissive comments from company leadership, and was confronted with blackface images in the company's content library. While some of Plaintiff's claims are legally insufficient, his allegations suffice for this case to proceed to discovery. Thus, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss.

**BACKGROUND**

Plaintiff Phillip Thompson ("Plaintiff") brings this action against Defendant Shutterstock, Inc. ("Shutterstock") and individual Defendants Heidi Garfield, Sara Birmingham, Andre Graham, and Leia LeFay (collectively, the "Individual Defendants," and together with Shutterstock, the "Defendants"), alleging that a series of unlawful employment actions were

taken against him. ECF No. 22 ("First Amended Complaint" or "Complaint" or "FAC"). Plaintiff

brings claims for race discrimination and retaliation under 42 U.S.C. § 1981 ("Section 1981"),

the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights

Law ("NYCHRL"). *See id*. ¶¶ 121–42. Plaintiff also brings claims for aiding and abetting

discrimination and retaliation under the NYSHRL and the NYCHRL. *Id.* ¶¶ 143–46.

Additionally, Plaintiff brings a claim for unequal pay pursuant to New York Labor Law

("NYLL") § 194 and the New York State Equal Pay Act ("NYSEPA"), *id.* ¶¶ 147–51 and a

claim for unpaid wages under NYLL § 191. *Id.* ¶¶ 152–158.

Pending before the Court is Defendants' motion to dismiss the First Amended Complaint.

ECF No. 20 ("Motion" or "Mot.").

The facts below are set forth as alleged in the First Amended Complaint. Plaintiff is a

Black man who, at all times relevant here, lived in New York City. FAC ¶ 7. Shutterstock is a

corporation headquartered in New York City that offers customers "access to a library of royalty-

free stock images, videos, and graphics." *Id.* ¶¶ 9, 24.

### A. Plaintiff's Employment at Shutterstock Prior to "A Seat at the Table" Presentation

Plaintiff began working for Shutterstock on or around December 10, 2017. *Id.* ¶ 25.

During his time at Shutterstock, Plaintiff received positive performance reviews. *Id.* ¶¶ 35, 44,

79. Plaintiff's performance was rated as "Highly Successful/Superior" for his 2018, 2019, and

2020 performance reviews. *Id.*

In May 2019, some of Plaintiff's Black coworkers told him about incidents Black

employees faced "shortly before" Plaintiff's arrival at Shutterstock. *Id.* ¶ 34. According to

Plaintiff's coworkers, some Black employees reserved seats to sit together at lunch. *Id.*

2

White employees described this form of socializing as "congregating," and "reported" this behavior to Shutterstock. *Id.* Plaintiff does not describe Shutterstock's reaction to these reports.

In or around February 2018, four of six Black employees in Plaintiff's "section" were laid off in one day. *Id.* ¶ 26. No White employees were laid off at this time, and none of the new hires who filled these four positions were Black. *Id.* ¶¶ 26–27.

On or around May 20, 2018, several White coworkers learned of Plaintiff's upcoming trip to Tanzania and asked Plaintiff if "he was visiting his family in Africa." *Id.* ¶¶ 30, 32. Plaintiff does not have any family members in Africa and inferred that these coworkers assumed that he had family in Africa due to his race. *Id.* ¶ 32. Plaintiff's coworkers also "routinely" commented on Plaintiff's hair. *Id.* ¶ 33. Some White coworkers also touched Plaintiff's hair without his consent. *Id.*

In May 2019, Plaintiff and other Black Shutterstock employees formed an all-Black employee resource group known as Shutterstock Afro-Descendants or "ShADEs." *Id.* ¶¶ 36–38. Nearly all of Shutterstock's Black employees joined ShADEs. *Id.* ¶ 39. Starting in late 2019, senior Shutterstock employees requested that ShADEs members assist Shutterstock with various tasks related to diversity, equity, and inclusion ("DEI"). *Id.* ¶ 42. While White employees were previously paid for performing the same DEI tasks, Plaintiff and ShADEs members were not. *Id.* ¶ 43. This pattern continued at least through June 2020. *Id.* ¶¶ 49–50.

In March 2020, in response to the COVID-19 pandemic, Shutterstock closed its offices at the Empire State Building and instructed Plaintiff and his colleagues to work remotely. *Id.* ¶¶ 46–47.

### B.  "A Seat at the Table" Presentation and Ensuing Fallout

In June 2020, ShADEs members, including Plaintiff, decided to organize and present a video panel discussing their discontent with the "racial climate" at Shutterstock. *Id.* ¶¶ 52–53. This panel was called "A Seat at the Table" ("ASAT"). *Id.* ¶ 53. During ASAT, Plaintiff and other ShADEs members called attention to Shutterstock's decision to assign DEI tasks to Black employees without additional compensation. *Id.* ¶ 54. Plaintiff and other ShADEs members also discussed in their presentation other negative, racially charged interactions that they experienced at Shutterstock, including the Tanzania comments, the comments about Plaintiff's hair, and the touching of Plaintiff's hair. *Id.* ¶ 56.

Shutterstock did not make the recording of ASAT publicly available, despite the fact that all other employee resource group presentations at Shutterstock were made publicly available. *Id.* ¶ 58. Shortly following ASAT, Defendant Garfield, who was then employed as Shutterstock's Acting Chief Human Resources ("HR") Officer and General Counsel, made several negative comments about the presentation. *Id.* ¶¶ 59–62. Defendant Garfield referred to the panel as "angry," "unproductive," and an attempt to "embarrass" Shutterstock. *Id.* ¶ 59. Defendant Garfield also claimed that, because the DEI work that ShADEs members performed was voluntary, it should not be paid. *Id.* ¶ 60. Defendant Garfield stated that any ShADEs members who found it difficult to accommodate the additional DEI work needed better time management skills. *Id.* Following Defendant Garfield's comments, many Black employees quit ShADEs because they feared that the company would hold their ShADEs membership against them. *Id.* ¶ 63.

At an unspecified time, Plaintiff discussed Shutterstock's reaction to ASAT with Employee Experience Specialist Amber Nobles, the only ShADEs member with whom senior

HR "communicated." *Id.* ¶ 64. Nobles warned Plaintiff that he would have been fired following his comments at ASAT if he had criticized any members of Shutterstock's leadership by name. *Id.*

On or about June 30, 2020, Plaintiff met with HR Business Representative Christina Wang to discuss his dissatisfaction with Shutterstock's response to ASAT. *Id.* ¶ 65. In or around August 2020, Wang sent a report to Defendant Birmingham, who was then Chief HR Officer at Shutterstock. *Id.* ¶ 67. In this report, Wang "reiterated and reported" several of Plaintiff's complaints. *Id.* Wang stated that the DEI work performed by ShADEs members was "work [that Shutterstock] would typically hire (and pay for)," and that the failure to pay for this work indicated that Shutterstock placed a low value on work performed by Black employees. *Id.* ¶ 70. Wang recommended that ShADEs members receive compensation for DEI work, but Shutterstock management did not implement this proposal. *Id.* ¶ 71.

Plaintiff also claims that, on or around October 20, 2021, he received "screenshots of emails reporting discrimination" (from August 2020) to Defendant Birmingham and HR Coordinator Laura Ethington. *Id.* ¶¶ 88, 108. These emails contained Plaintiff's complaints regarding Shutterstock's workplace culture and DEI compensation policies. *Id.* ¶ 108.

### C.  Plaintiff's March 2021 Promotion and Accompanying Workload

On March 1, 2021, Plaintiff was promoted to a managerial position at Shutterstock. *Id.* ¶ 72. Plaintiff alleges that he was the only Black man to ever hold a managerial position in his department, *id.* ¶ 78, although Defendant Graham, a Black man then serving as Director of Customer Success at Shutterstock, was Plaintiff's direct manager in this new role, *id.* ¶ 77. Additionally, Plaintiff was one of only ten Black Shutterstock employees who held a management position. *Id.* ¶ 78. At the time, 235 employees held management positions at

Shutterstock. *Id.* The March 2021 promotion was the only "non-lateral promotion" that Plaintiff received during his time at Shutterstock. *Id.* ¶ 73. Denise Quaglia, a White woman then serving as the Vice President of Plaintiff's department, joined Shutterstock a year before Plaintiff but was "promoted five times in the same period in which Plaintiff was promoted once." *Id.* ¶ 74. Additionally, two other employees, Alexandra Zusman and Mike Lucero, were promoted over Plaintiff during this time period. *Id.* ¶ 75. The Complaint notes that Plaintiff had "greater experience" than these two employees, but does not note the race of either Zusman or Lucero. *Id.* Plaintiff's new position came with the responsibility of overseeing five "direct reports" from other employees. *Id.* ¶ 76. However, Defendant Graham, then Director of Customer Success at Shutterstock, assigned 25 direct reports to Plaintiff. *Id.* ¶ 77.

### D. Plaintiff's Failed Attempts to Schedule a Meeting With Defendant Birmingham

In or around April 2021, Plaintiff used an online form to try and set up a conversation with Defendant Birmingham but received no response. *Id.* ¶¶ 83, 92. Plaintiff reached out a second time on July 20, 2021, but again received no response. *Id.* ¶ 92. On August 4, 2021, Plaintiff messaged Defendant Birmingham directly, without the use of the form, to set up a meeting. *Id.* ¶ 93. Defendant Birmingham told Plaintiff that the form was no longer in use and that she would arrange a meeting through HR Coordinator Ethington. *Id.* Plaintiff reached out to Ethington on numerous occasions but no meeting between Plaintiff and Defendant Birmingham was ever scheduled. *Id.*

### E. Plaintiff's Meeting with Meeckel Beecher and Plaintiff's Complaints Regarding Blackface Images in Shutterstock's Content Library

In early September 2021, Plaintiff met with Meeckel Beecher, Shutterstock's Global Head of DEI, and HR Director Margarita Buffel. *Id.* ¶¶ 82, 87, 95. At this meeting, Plaintiff raised the same complaints discussed in ASAT and reiterated a prior request that Shutterstock

remove images featuring blackface from Shutterstock's content library pursuant to its objectionable content policy. *Id.* ¶¶ 95, 97. In response, Beecher merely reiterated Shutterstock's policy regarding compensation for work done by employee resource groups. *Id.* ¶ 96. Plaintiff's allegations leave unclear what, if anything, Beecher said in response to Plaintiff's complaint about blackface images and Shutterstock's content policy.

However, Plaintiff does state that, following complaints to Shutterstock's social media team, he received a response from "Shutterstock." *Id.* ¶¶ 97–98. In this response, Shutterstock offered three justifications for hosting blackface images. *Id.* ¶ 98. First, Shutterstock stated that hosting the images was justified for "teaching purposes." *Id.* Second, Shutterstock stated that the policy existed only to protect Shutterstock's reputation, and therefore it did not matter whether the policy was actually enforced. *Id.* Third, Shutterstock stated that changing the algorithm that handled metadata would cause too many technical issues. *Id.* In any case, Shutterstock removed some images that Plaintiff complained about, but otherwise continued not to enforce its content policy with respect to blackface images, which continued through the end of Plaintiff's employment at Shutterstock. *Id.* ¶¶ 100–01.

### F.  Shutterstock's Denial of Plaintiff's Remote Work Request

In late May 2021, Shutterstock began forming plans to return to in-person work, and Plaintiff submitted a request to continue working remotely. *Id.* ¶ 84. At that time, several White employees in Plaintiff's department had already been approved to continue working remotely. *Id.* ¶ 85. HR Director Haracopos approved Plaintiff's remote work request. *Id.* ¶ 86.

In June 2021, Buffel told Plaintiff to write a letter to Defendant Graham, asking for his permission to continue working remotely. *Id.* ¶ 87. At an unspecified time, Defendant Graham told Plaintiff that his position could be performed remotely. *Id.* ¶ 103.

In or around mid-September 2021, Plaintiff's request to continue working remotely in his then-current position was denied by Quaglia and Buffel. *Id.* ¶ 102. However, Quaglia told Plaintiff that if he did not wish to continue working in-person in his then-current position, Shutterstock would help find him a suitable remote position so that Shutterstock would not "lose his talent." *Id.* ¶ 103. Plaintiff claims that switching to a new position would "likely" have come with a decrease in pay but does not allege that Shutterstock indicated that the new position would entail lower pay. *Id.*

### G. Plaintiff's Departure From Shutterstock

In or around late September 2021, Plaintiff raised his concerns about Shutterstock's workplace culture to Defendant Graham. *Id.* ¶ 106. Defendant Graham responded by asking Plaintiff why he chose to remain at Shutterstock given his dissatisfaction and his belief that things at Shutterstock were not changing. *Id.* ¶ 107.

On or around December 1, 2021, Plaintiff submitted his two-week notice of resignation to Shutterstock. *Id.* ¶ 112. At his exit interview on or around December 8, 2021, Plaintiff told Ethington that he was leaving the company due to Shutterstock's "toxic, discriminatory work environment and lack of support from HR." *Id.* ¶ 113.

In or around April 2022, Plaintiff's current counsel sent a litigation hold letter to Shutterstock. *Id.* ¶ 117. Following receipt of the letter, Senior Manager for Customer Care Operations Elise Berkowitz and Defendant Graham held a meeting with Plaintiff's former coworkers at which they stated that Plaintiff had spread "lies, stories, and rumors" about Shutterstock employees and insinuated that they should not think of Plaintiff as a friend. *Id.* ¶ 118. Following the meeting, some of Plaintiff's former coworkers, whom he had "remained friendly" with, blocked Plaintiff on social media and blocked his phone number. *Id.* ¶ 119.

### H.  Procedural History

On May 5, 2023, Plaintiff initiated this suit in New York State Court. *See* ECF No. 1-4. On May 19, 2023, the case was removed to this Court. *See* ECF No. 1. On September 15, 2023, Defendants moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 20. Thereafter, Plaintiff amended his Complaint, and Defendants indicated that, pursuant to the Court's Individual Rules, they will rely on their initially filed motion to dismiss with respect to the FAC. ECF No. 23.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

**DISCUSSION**

Plaintiff brings a claim for unpaid wages under NYLL § 191 against Shutterstock, FAC ¶¶ 152–58, which Defendants do not move to dismiss.

In his opposition brief, Plaintiff voluntarily withdraws all claims against Defendant LeFay, his NYLL claims for unequal pay and unpaid work against all the Individual Defendants, and any purported Section 1981 claim for aiding and abetting. ECF No. 30 ("Opp.") at 1 n.1, 19 n.2. Thus, these claims are dismissed with prejudice.

The Court first analyzes Plaintiff's Section 1981 discrimination claims against Shutterstock that are based upon discrete adverse employment actions, finding that Plaintiff states a claim based upon alleged discriminatory compensation, but not based upon an alleged failure to promote, an excessive workload, or the denial of his remote work request. Then, the Court analyzes Plaintiff's Section 1981 claims against Shutterstock that are based upon aggregated acts of hostility, finding that Plaintiff fails to state claims for a hostile work environment or a constructive discharge. Next, the Court finds that Plaintiff states a Section 1981 retaliation claim against Shutterstock. Then, the Court analyzes Plaintiff's Section 1981 discrimination and retaliation claims against the Individual Defendants, finding that Plaintiff does not state a discrimination or retaliation claim against Defendant Graham, states a discrimination claim but not a retaliation claim against Defendant Birmingham, and states both a discrimination claim and a retaliation claim against Defendant Garfield.

The Court then analyzes Plaintiff's NYCHRL claims against Shutterstock, finding that Plaintiff states both discrimination and retaliation claims against Shutterstock. Next, the Court analyzes Plaintiff's NYCHRL claims against the Individual Defendants, finding that Plaintiff states claims for direct discrimination and retaliation and aiding and abetting discrimination and

retaliation against Defendants Graham and Garfield and states claims for direct discrimination and aiding and abetting discrimination against Defendant Birmingham, but not direct retaliation and aiding and abetting retaliation against Defendant Birmingham.

The Court then discusses Plaintiff's NYSHRL claims, finding that they rise or fall with Plaintiff's NYCHRL claims.

Finally, the Court finds that Plaintiff does not state a claim against Shutterstock under the NYSEPA.

**I.    Plaintiff States a Section 1981 Discrete Adverse Employment Action Claim Against Shutterstock Based on Discriminatory Compensation**

To state a Section 1981 discrimination claim, Plaintiff must plausibly allege: "(1) that [he] is a member of a protected class, (2) that [he] was qualified for the position [he] sought, (3) that [he] suffered an adverse employment action, and (4) [that he] can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation . . . ." *Littlejohn v. City of New York*, 795 F.3d 297, 311–12 (2d Cir. 2015) (internal citation omitted) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)) ("[Plaintiff's] disparate treatment claim under Title VII [and Section] 1981 . . . is subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*."). Under Title VII and Section 1981, "[a]n adverse employment action is a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (internal citation and quotation marks omitted) (laying out the standard for an adverse employment action in the context of a Title VII discrimination claim); *see also Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (analyzing Section 1981 claim under the same adverse employment action framework as Title VII claim). "Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities, or other indices . . .

unique to a particular situation." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (internal

citation and quotation marks omitted).

With respect to the first element of the *McDonnell Douglas* quartet, Plaintiff has

established that, as a Black employee, he was a member of a protected class. FAC ¶ 7; *Littlejohn*,

795 F.3d at 312 (finding that a Black employee belonged to a protected class for the purposes of

Title VII and Section 1981). With respect to the second element, Plaintiff has also established

that, based on his many positive performance reviews, he was more than qualified for the

positions he held at Shutterstock. FAC ¶¶ 35, 44, 79; *see Grewcock v. Yale New Haven Health*

*Servs. Corp.*, 293 F. Supp. 3d 272, 279 (D. Conn. 2017) ("[T]here is little doubt that plaintiff was

qualified for her position. Plaintiff received a number of positive performance reviews.").

Therefore, Plaintiff's discrete adverse employment action claim may proceed so long as he also

demonstrated that he suffered an adverse employment action and that the adverse employment

action occurred under circumstances that give rise to a minimal inference of discrimination. *See*

*Littlejohn*, 795 F.3d at 311 .

A plaintiff bringing a claim under Section 1981 "may allege that discrimination occurred

in the form of discrete adverse employment actions, as well as by means of conduct creating a

'hostile work environment.'" *Brown v. Montefiore Med. Ctr.*, No. 19-CV-11474 (ALC), 2021 WL

1163797, at *4 (S.D.N.Y. Mar. 25, 2021) (citing *Patterson v. County of Oneida*, 375 F.3d 206,

226 (2d Cir. 2004)). Because Section 1981 adverse employment action claims look at particular

instances of employment discrimination, rather than aggregations of hostilities, *see id*. at *5–7,

the Court analyses each potential adverse action separately. For the reasons discussed below, the

Court finds that Plaintiff has not adequately pled a discrete adverse employment action claim

based upon a failure to promote, an excessive workload, or a denial of a remote work request. However, the Court finds that Plaintiff has stated a discrete adverse employment action claim based upon discriminatory compensation.

### A. Failure to Promote

A discriminatory failure to promote an employee may qualify as an adverse employment action for the purposes of a discrete adverse employment action claim. *See Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir. 2003) (internal citation omitted) (finding that the plaintiff "suffered an adverse employment action as a result of the decision not to promote him"). To establish a prima facie case that Shutterstock failed to promote him due to discrimination, Plaintiff "must establish that: '(1) [he] is a member of a protected class; (2) [he] applied and was qualified for a job for which the employer was seeking applicants; (3) [he] was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications.'" *Taylor v. City of New York*, 207 F. Supp. 3d 293, 303 (S.D.N.Y. 2016) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009)). To state a discriminatory failure to promote claim, a plaintiff must typically "allege that she or he applied for a specific position or positions and was rejected therefrom." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998). In order to state such a claim without identifying a specific position that the plaintiff applied for, a plaintiff would need to demonstrate that "(1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Petrosino v. Bell Atl.*, 385 F.3d 210, 226–27 (2d Cir. 2004) (citing *Brown*, 163 F.3d at 710 n.2).

Here, Plaintiff alleges that his promotion "was severely delayed due to his race" and identifies three comparators who were promoted during the time period that Plaintiff worked at

Shutterstock. FAC ¶¶ 74–75. However, Plaintiff does not identify any positions for which he applied. Nor does Plaintiff allege that specific vacancies at Shutterstock went unposted. Therefore, Plaintiff has not stated a discrete adverse employment action claim based upon a discriminatory failure to promote.

### B. Excessive Workload

A discriminatory allocation of excessive work to an employee may qualify as an adverse employment action for the purposes of a discrete adverse employment action claim. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015) (internal quotation marks omitted) (concluding that the plaintiff suffered an adverse employment action when he received a disproportionately heavier workload than his colleagues). However, courts in this Circuit have repeatedly held that "[i]t is only where a plaintiff is given a workload heavier than similarly situated employees where such a workload may constitute an adverse employment action." *Kirkland-Hudson v. Mount Vernon City School District*, 665 F. Supp. 3d 412, 451–52 (S.D.N.Y. 2023) (internal citation omitted).

In this case, Plaintiff alleges that upon being promoted he was only supposed to oversee reports from five other employees but was instead assigned to oversee 25 reports. FAC ¶¶ 76–77. Although this workload may have been incommensurate with his title, Plaintiff has not alleged that it was incommensurate with the workload that Shutterstock assigned to non-Black employees in similar roles to Plaintiff. Therefore, Plaintiff's allegations regarding his assigned workload do not state a discrete adverse employment action claim.

### C. Denial of Remote Work Request

"Prior to the COVID-19 pandemic, courts in the Second Circuit generally found that denying an employee's request to work remotely was not an adverse employment action." *Gayles*

*v. Roswell Park Cancer Inst. Corp.*, No. 22-CV-750 (CR), 2023 WL 6304020, at *4 (W.D.N.Y. Sept. 28, 2023). However, district courts are divided on whether such denials may constitute adverse employment actions when they occurred during the COVID-19 pandemic. *Id.* at *5 nn.4–5 (collecting cases). At least one court in this Circuit has held that the decision to deny a Black employee the opportunity to work remotely during the early months of the COVID-19 pandemic (March to June 2020) could qualify as an adverse employment action where White employees in the same department were allowed to work from home. *See id.* at *2, 6.

A demotion may also qualify as an adverse employment action, particularly when it is "a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Terry*, 336 F.3d at 138 (internal citation omitted). However, a transfer to a different position, on its own, does not necessarily constitute an adverse employment action. *See Stewart v. City of New York*, No. 22-2775, 2023 WL 6970127, at *2 (2d Cir. Oct. 3, 2023) (affirming grant of summary judgment where plaintiff offered no evidence that his transfer "adversely impacted his employment conditions"). The Supreme Court recently held that in order for a transfer from one job to another to qualify as an adverse employment action, a plaintiff must show "some injury respecting her employment terms or conditions" and that "[t]he transfer must have left her worse off, but need not have left her significantly so." *Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967, 976–77 (2024).

Here, Plaintiff has not adequately pled a discrete adverse employment action claim based upon Shutterstock's decision to deny his remote work request. Plaintiff alleges that, when he met with Quaglia to discuss his request, she told him that his position could not be "fulfilled remotely" and offered to help Plaintiff find a different remote position within Shutterstock so that

Shutterstock would not have to "lose [Plaintiff's] talent." FAC ¶ 103. Plaintiff alleges that he "had no desire" to find a new position at Shutterstock, and that any new position would "likely [have come] with a decrease in pay." *Id.* However, Plaintiff does not allege that Shutterstock indicated that any new position would come with a decrease in pay, nor does he allege any additional facts to show that a new position at Shutterstock would have adversely impacted the terms of his employment. Therefore, Plaintiff has not stated a discrete adverse employment action claim based upon the denial of his remote work request.

### D. Discriminatory Compensation

Plaintiff argues that Shutterstock's failure to pay him and other ShADEs members for DEI work serves as the basis for a Section 1981 claim. Opp. at 7. Under Section 1981, discriminatory compensation may constitute an adverse employment action. *See Craven v. City of New York*, No. 19-CV-1486 (JMF), 2020 WL 2765694, at *5 (S.D.N.Y. May 28, 2020) (finding allegations of discriminatory compensation sufficient to constitute an adverse employment action under Section 1981). In the Title VII context, a plaintiff "alleging a discriminatory compensation practice need not establish that [he] performed equal work for unequal pay." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 110 (2d Cir. 2019). Title VII's purpose is to prohibit *any* form of discriminatory compensation based on protected characteristics; unequal pay for equal work is just one form of discrimination. *Id*. An employer could also discriminate against an employee by, for example, hiring a woman for a unique position within a company and then paying her less than the employer *would have* paid a male employee for the same position. *Id.* (citing *Washington Cnty. v. Gunther*, 452 U.S. 161, 179 (1981)). In such a case, the employee would state a claim even if she could not point to another male employee in the company in the same position with a higher rate of pay. *See id.*

16

This same logic applies to employment discrimination claims under Section 1981 because Section 1981 does not protect an individual's narrow right to receive equal pay for equal work, but instead ensures that all persons shall have the same "right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a); *see also Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 436 (1968) (noting that the purpose of Section 1981 is "to prohibit all racial discrimination . . . with respect to the rights enumerated therein."); *cf.* 29 U.S.C. § 206(d)(1) (prohibiting unequal pay on the basis of sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions").

Here, Plaintiff alleges that, following the creation of ShADEs, Shutterstock began asking ShADEs members to perform uncompensated DEI work that White employees had previously been paid for performing. FAC ¶¶ 42–43. Plaintiff also alleges that HR Business Representative Wang submitted a report to HR leadership stating that the DEI work performed by ShADEs members was "work [that Shutterstock] would typically hire (and pay for)." *Id.* ¶ 70. Wang's report included a recommendation that Shutterstock begin paying ShADEs members for DEI work in the form of Restricted Stock Units. *Id.* ¶ 71. Accepting these allegations as true, as the Court must at this juncture, it is plausible that Shutterstock assigned Black employees, including Plaintiff, DEI work that it would have paid White employees to do. Therefore, Plaintiff has adequately pled that he suffered an adverse employment action – discriminatory compensation – and that this action occurred under circumstances that give rise to an inference of discrimination. Thus, Plaintiff has stated a discrete adverse employment action claim under Section 1981 based on discriminatory compensation.

**II.      Plaintiff Fails to State a Section 1981 Hostile Work Environment Claim Against Shutterstock**

Hostile work environment claims, rather than focusing on discrete adverse acts taken against employees, aggregate acts of hostility taken against employees based upon their protected characteristics. *See Gregory v. Daly*, 243 F.3d 687, 693 (2d Cir. 2001) ("looking at the totality of the circumstances rather than to individual events in isolation" in analysis of hostile work environment claim). To state a claim for a hostile work environment under Title VII and Section 1981, Plaintiff must show that the complained-of conduct: "(1) [was] objectively severe or pervasive; (2) create[d] an environment that [Plaintiff] subjectively perceive[d] as hostile or abusive; and (3) create[d] such an environment because of [Plaintiff's] race." *Goins v. Bridgeport Hosp.*, 555 Fed. App'x 70, 71–72 (2d Cir. 2014). "In short, a plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal citation and quotation marks omitted). Workplace incidents are objectively severe or pervasive enough to create a hostile work environment only if they ultimately "alter the conditions of [a plaintiff's] employment." *See Goins*, 555 Fed. App'x at 72 (internal citations omitted); *see also Baron v. Winthrop Univ. Hosp.*, 211 Fed. App'x 16, 17 (2d Cir. 2006) (internal citation and quotation marks omitted) (affirming grant of summary judgment for the employer because the complained-of conduct was "not sufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment, so as to constitute a hostile work environment").

Additionally, employers are not automatically liable for improper workplace conduct by employees. Plaintiff must allege one of two bases to impute liability to an employer: either "strict vicarious liability if an employer's supervisor has created the hostile environment" or

"negligence if a co-worker who is not a supervisor has created the hostile environment, and the employer, upon becoming aware of the misconduct, fails to remedy it." *Bentley v. Autozoners, LLC,* 935 F.3d 76, 90–91 (2d Cir. 2019) (internal citations omitted). A coworker is a supervisor only if that coworker "is empowered by the employer to take tangible employment actions against the [plaintiff]." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). However, when evaluating whether an employer is negligent in failing to control working conditions, "the nature and degree of authority wielded by the harasser is an important factor to be considered in determining whether the employer was negligent." *Id.* at 445–46.

The Court considers, in turn, the various alleged acts of harassment taken against Plaintiff at Shutterstock. For each act, the Court determines whether liability for the act can be imputed to Shutterstock, whether the act occurred under circumstances supporting a minimal inference of discrimination, and whether the act, on its own, was severe enough to create a hostile work environment. Finally, the Court considers whether those discriminatory acts that can be imputed to Shutterstock were, in the aggregate, sufficiently severe or pervasive to alter the conditions of Plaintiff's employment. For the reasons discussed below, the Court finds that Plaintiff's allegations are insufficient to state a hostile work environment claim against Shutterstock.

### A.  Complaints That Black Employees "Congregated" During Lunch

Plaintiff alleges that, prior to his arrival at Shutterstock, Black employees were discouraged from sitting together during lunch. FAC ¶ 34. Coworkers told Plaintiff that White employees "reacted negatively" to Black employees sitting together and reported Black employees for "congregating." *Id.*

Assuming, *arguendo*, that events that occurred prior to an employee's arrival at a company can contribute toward a hostile work environment experienced by that employee, and

that complaints regarding "congregating" are sufficiently negative and contain sufficient racial animus to contribute toward a hostile work environment, Plaintiff still fails to allege sufficient basis for holding Shutterstock liable for this incident. Plaintiff does not allege that any supervisors discouraged Black employees from sitting together. *Id.* Nor does Plaintiff allege that this issue was brought to Shutterstock's attention and that Shutterstock failed to act. *Id.* Although Shutterstock was made aware of this issue, on some level, by the alleged complaints of White employees, there is no indication that any employees complained to Shutterstock about the behavior of the White employees. Nor is there any indication that these sorts of incidents continued following the initial comments from the White employees or at any point during Plaintiff's employment. Therefore, Plaintiff cannot impute liability to Shutterstock for this incident. *See Bentley, LLC,* 935 F.3d at 90–91.

### B. Touching of Plaintiff's Hair

Plaintiff alleges that Shutterstock employees commented on Plaintiff's hair, such as by asking him if his hair was "natural." FAC ¶ 33. Some White employees went further and touched Plaintiff's hair without his consent. *Id.* Plaintiff eventually changed his hairstyle and began to wear a hat to prevent other employees from touching his hair. *Id.* Plaintiff does not specify who touched his hair, although he says that the hair touching occurred "routinely." *Id.* Plaintiff ultimately complained to Shutterstock about the hair touching, but only after Plaintiff had begun working remotely. *Id.* ¶¶ 47, 56.

Some courts have found that unwanted touching of an employee's hair, when done because of the employee's race, can contribute to a hostile work environment. *See, e.g.*, *Andrews v. Virginia Polytechnic Inst.*, No. 18-CV-281 (GEC), 2020 WL 714234, at *10 (W.D. Va. Feb. 12, 2020) (concluding that "unwanted physical touching of hair, if done so 'because of' an

individual's race, may constitute actionable race-based harassment"); *Zaire v. Protective Services Training Academy, LLC*, No. 17-CV-1185 (PWG), 2019 WL 2289999, at *11 (D. Md. May 29, 2019) (finding that a reasonable juror could find a hostile work environment where, among other things, a coworker touched a Black employee's hair in the workplace). However, here, Plaintiff has alleged no basis for imputing the touching of his hair to Shutterstock. Plaintiff does not allege that a supervisor touched his hair. Nor does Plaintiff allege that Shutterstock failed to prevent employees from touching his hair following his complaints. Because Plaintiff was working remotely by the time he complained about the hair touching incidents, *see* FAC ¶¶ 47, 56, it is not plausible that Shutterstock's response impacted whether other Shutterstock employees continued to touch Plaintiff's hair. Because Plaintiff has not pled facts from which liability for the hair touching can be imputed to Shutterstock, the acts of hair touching do not factor into the hostile work environment analysis.

### C. Assumptions About Plaintiff's Family

Plaintiff also argues that assumptions that he had family in Africa contributed to a hostile work environment. Opp. at 7. It is plausible that assumptions about an employee's family history could contribute to a hostile work environment. *See Quintana v. Smyrna Ready Mix Concrete, LLC*, No. 19-CV-224 (SCJ) (JCF), 2021 WL 10366009, at *7 (N.D. Ga. July 27, 2021), *report and recommendation adopted*, No. 19-CV-224 (SCJ), 2021 WL 10366014 (N.D. Ga. Sept. 16, 2021) (acknowledging that "erroneous assumptions about [the plaintiff's nationality]" were offensive although alone were insufficient to create a hostile work environment). However, the Court need not reach this issue here. Plaintiff does not allege that a supervisor made the comments about his family or that any of the Individual Defendants made these comments. FAC ¶ 32. Nor does Plaintiff allege that similar comments continued to be made after he complained

about such comments during ASAT. *Id*. ¶ 56. Therefore, the assumptions about Plaintiff's family are not imputed to Shutterstock and do not count toward a hostile work environment claim against Shutterstock.

### D.  February 2018 Discharge of Plaintiff's Coworkers

Plaintiff argues that Shutterstock's decision to fire four Black employees in his section in February of 2018 contributed to a hostile work environment that Plaintiff experienced. Opp. at 11. Acts directed at other employees can contribute to a hostile work environment claim. *See Leibovitz v. N.Y.C. Transit Auth*., 252 F.3d 179, 190 (2d Cir. 2001) ("[E]vidence of harassment directed at other coworkers can be relevant to an employee's own claim of hostile work environment discrimination . . . [and] remarks made outside a plaintiff's presence can be relevant to a hostile work environment claim."). The relevant inquiry is whether acts outside of Plaintiff's presence ultimately changed the "terms and conditions of [Plaintiff's] employment." *Id.* at 189–90 (finding that the terms and conditions of a plaintiff's employment were not changed where the employees who were harassed were out of the plaintiff's "regular orbit," had a supervisor with no authority over the plaintiff, and did not directly communicate their experiences to the plaintiff).

In this case, whoever made the decision to fire Plaintiff's coworkers presumably had the authority to fire him as well. However, Plaintiff does not allege that his discharged coworkers directly communicated their experiences to him, nor does Plaintiff indicate that any Shutterstock decisionmakers similarly altered the terms and conditions of his employment, which continued for several more years. Plaintiff repeatedly received positive performance reviews at Shutterstock and was eventually promoted. FAC ¶¶ 35, 44, 71, 79. Under these circumstances,

Plaintiff has not plausibly alleged that Shutterstock's decision to fire four of Plaintiff's coworkers in 2018 contributed to a hostile work environment experienced by Plaintiff.

### E. Shutterstock's Refusal to Remove Blackface Images From Its Content Library

Plaintiff argues that Shutterstock's failure to enforce its own content moderation policy and remove offensive images – namely, those portraying blackface – from Shutterstock's content library contributed towards a hostile work environment. Opp. at 11; FAC ¶¶ 97–101. Offensive images can contribute to a hostile work environment. *See Banks v. Gen. Motors, LLC,* 81 F.4th 242, 264–65 (2d Cir. 2023) (finding that offensive images such as nooses and Confederate flags contributed to a hostile work environment). Images portraying blackface are certainly offensive. Plaintiff alleges that many of these images remained in Shutterstock's content library in violation of Shutterstock's own content policy. FAC ¶¶ 97–101. Additionally, Plaintiff alleges that he reported these issues to Shutterstock's social media team and to Beecher and was told that Shutterstock only maintained the policy to make the organization look good and did not actually care about enforcing the policy. *Id*. ¶ 98. Finally, Plaintiff alleges that, while Shutterstock removed some of the offensive images, Shutterstock allowed many of the blackface images to remain in its content library and that Shutterstock employees continued to "distribute inaccurate and offensive guidance regarding Shutterstock's content policy." *Id*. ¶¶ 100–01. It is plausible that the presence of offensive blackface images in Shutterstock's content library, combined with selective application of Shutterstock's own content moderation policy in response to a complaint from a Black employee, could contribute to a racially hostile work environment. Therefore, this conduct may count toward a hostile work environment claim against Shutterstock.

However, Shutterstock's refusal to remove some blackface images from its content library was not sufficiently severe, on its own, to create a hostile work environment. The

placement of an offensive image or object in a workplace may be severe enough to create a hostile work environment. *See Banks*, 81 F.4th at 265 ("A reasonable jury could find that even a single placement of [a noose] – imbued as it is with historical gravity as a symbol and tool of actual violence – directly at the workstation of a Black employee could amount to severe conduct sufficient to support an inference that the workplace is hostile to Black employees."). However, Plaintiff's allegations lack sufficient detail regarding the nature and context of the images for the Court to infer that they rise to this level of severity. Nor does Plaintiff allege that he or other Shutterstock employees regularly encountered these images during the course of their employment. Given this lack of detail, and absent other indica of the severity or pervasiveness of the blackface images, the Court does not find it plausible that Shutterstock's refusal to remove some blackface images from its content library rose to the level of a hostile work environment.

### F.  Defendant Garfield's Comments in Response to "A Seat at the Table"

Plaintiff alleges that Shutterstock's response to ASAT, in which Defendant Garfield referred to ShADEs members as "angry," and "unproductive," and stated that their complaints indicated that they possessed poor time management skills, contributed to a hostile work environment. FAC ¶¶ 59–60; Opp. at 11. Otherwise race neutral words may convey racial animus based upon "context, inflection, tone of voice, local custom, and historical usage." *Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 456 (2006). Here, Defendant Garfield described Black employees as angry and lacking in time management skills in response to a presentation from Black employees about the racial climate at Shutterstock and problems specific to their experience as Black employees. FAC ¶¶ 54, 59–60. Additionally, these comments were made in the context of Shutterstock's decision not to make a recording of the ASAT presentation publicly available, even though Shutterstock made all other employee resource group presentations available to the

general public. *Id*. ¶ 58. Given this context, it is plausible that Defendant Garfield's comments were not a neutral assessment of ShADEs members, but a discriminatory assessment that invoked racist tropes that Black workers are angry and unproductive.

Additionally, Defendant Garfield's status as Shutterstock's General Counsel and Chief HR Officer means that Shutterstock is liable for Defendant Garfield's actions. *See Vance*, 570 U.S. at 424 (noting that an employer is strictly liable for the acts of supervisors who are "empowered by the employer to take tangible employment actions against the plaintiff."). Here, Plaintiff alleges that Defendant Garfield "had the ability to affect the terms and conditions of Plaintiff's employment." FAC ¶ 16. This allegation is particularly plausible given that Defendant Garfield simultaneously held two leadership positions within Shutterstock. *Id.* ¶ 15. Therefore, Shutterstock is liable for Defendant Garfield's actions in the wake of ASAT.

Furthermore, while Defendant Garfield's comments were not spoken directly to Plaintiff, they nonetheless contributed to the hostile work environment Plaintiff experienced. As noted above, acts of harassment committed outside of an employee's presence can contribute to a hostile work environment claim, and the relevant inquiry is whether harassment outside of Plaintiff's presence ultimately changed the "terms and conditions of [Plaintiff's] employment." *Leibovitz*, 252 F.3d at 189–90. Here, although Defendant Garfield's comments were made outside of Plaintiff's presence, they still communicated a negative view of ShADEs members that ultimately caused many members to leave ShADEs. FAC ¶¶ 61–63. Additionally, as noted above, Defendant Garfield's status as Chief HR Officer and General Counsel renders it more than plausible that she had the power to take tangible employment actions against Plaintiff. *Id.* ¶¶ 15–16. Therefore, Defendant Garfield's response to ASAT is properly considered in the hostile work environment analysis.

However, Defendant Garfield's comment is not severe enough, on its own, to create a hostile work environment. For a single act to create a hostile work environment, it must be so severe that it "work[s] a transformation of the plaintiff's workplace." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). Here, Defendant Garfield's comment occurred outside of Plaintiff's presence, FAC ¶ 59, approximately nine months before Plaintiff received a promotion and another positive performance review, *id.* ¶¶ 72, 79. While "[t]here may well exist circumstances where a single use of [a racial slur] would rise to the level of a hostile work environment," *Albert-Roberts v. GGG Const., LLC*, 542 Fed. App'x 62, 64 (2d Cir. 2013), the circumstances surrounding Defendant Garfield's comment do not indicate that the comment was severe enough on its own to transform the workplace of a reasonable employee in Plaintiff's position.

### G.  Defendant Graham's September 2021 Comment

Plaintiff argues that Defendant Graham contributed to a hostile work environment when, in response to Plaintiff's complaints about Shutterstock's toxic workplace culture, Defendant Graham asked Plaintiff why he chose to remain at Shutterstock given his dissatisfaction and his belief that things at Shutterstock were not changing. Opp. at 10 (citing *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001)). In response, Defendant argues that such a comment on its own is insufficient to support a hostile work environment claim. ECF No. 31 ("Reply") at 3, 3 n.4 (citing *Wilson v. Fam. Dollar Stores of N.Y., Inc.*, No. 06-CV-0639 (DGT), 2008 WL 4426957, at *8 (E.D.N.Y. Sept. 25, 2008)).

Additionally, Defendant argues that because Defendant Graham is Black, Plaintiff's complaint is "particularly devoid of facts from which this Court can infer animus" against Defendant Graham. Reply at 9 n.10. This argument is unavailing and will not guide the Court's analysis. *See Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 55 (2d Cir. 1998) ("The proposition

that people in a protected category cannot discriminate against their fellow class members is patently untenable.").

Here, Plaintiff spoke to Defendant Graham about his frustration with the discriminatory nature of Shutterstock's work environment and Defendant Graham responded by asking Plaintiff why he remained at Shutterstock if he was so unhappy and did not believe that anything was changing. FAC ¶¶ 106–07. A statement that an employee is free to quit can contribute to a hostile work environment. *Gregory*, 243 F.3d at 693 (concluding that a sufficiently hostile work environment was alleged because, among other things, the plaintiff was told that she should "get on board or quit"). In this case, because the comment was made by a supervisor, FAC ¶¶ 11–12, 77, 106–07, and because it was made in response to a legitimate complaint regarding discrimination, and thus is plausibly shaded with discriminatory animus, it is properly considered in the hostile work environment analysis.

However, Defendant Graham's comment was simply not severe enough, on its own, to create a hostile work environment. *See Wilson*, 2008 WL 4426957, at *7–8 (not finding a hostile work environment where, among other things, the plaintiff was reminded that she could quit).

### H.  The Aggregated Acts Plaintiff Alleges Fail to State a Section 1981 Hostile Work Environment Claim

The acts of alleged hostility experienced by Plaintiff, considered together, are not sufficiently pervasive to state a hostile work environment claim. Here, Plaintiff experienced two negative remarks from supervisors, as well as an unknown number of encounters with blackface images, over approximately 18 months. FAC ¶¶ 59, 101, 113. Courts have routinely found that similarly hostile remarks made at a similar frequency do not create a hostile work environment. *See Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 781 (S.D.N.Y. 2019) (collecting cases). Additionally, while "a plaintiff need not provide a list of every alleged

discriminatory remark and incident of harassment to state a claim for hostile work environment," *Hagan v. City of New York*, 39 F. Supp. 3d 481, 500 (S.D.N.Y. 2014) (citation omitted), "[c]onduct that is 'episodic' and not sufficiently 'continuous and concerted' will not be deemed pervasive," *Floyd v. New York Pub. Radio*, No. 23-CV-1096 (ALC), 2024 WL 1407058, at *7 (S.D.N.Y. Apr. 2, 2024) (quoting *Littlejohn*, 795 F.3d at 321). Here, Plaintiff does not allege that supervisors routinely harassed him on the basis of race, nor does he allege that he routinely encountered blackface images in the workplace. Considering his allegations together, Plaintiff does not plausibly allege that the foregoing incidents constitute a pervasive pattern of harassment or hostility.

Because Plaintiff does not allege incidents which were severe enough to create a hostile work environment on their own, and because Plaintiff does not allege that he was the victim of pervasive workplace hostility, Plaintiff fails to state a hostile work environment claim. *See Alfano*, 294 F.3d at 373–74.

### III.   Plaintiff Fails to State a Section 1981 Constructive Discharge Claim Against Shutterstock

Constructive discharge claims are subject to the same analysis under both Title VII and Section 1981. *See Spires v. Metlife Grp., Inc*., No. 18-CV-4464 (RA), 2019 WL 4464393, at *9 (S.D.N.Y. Sept. 18, 2020) (collecting cases). To adequately plead a constructive discharge claim, Plaintiff must allege that the employer "intentionally create[d] a work atmosphere so intolerable that [Plaintiff was] forced to quit involuntarily." *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004) (internal citation omitted); *see also Miller v. Praxair, Inc.*, 408 Fed. App'x 408, 410 (2d Cir. 2010) (affirming grant of summary judgment to an employer where no reasonable trier of fact could determine that the plaintiff had "no choice" but to resign). Thus, Plaintiff must allege that Shutterstock intentionally created intolerable conditions, and was not "mere[ly] negligen[t]

or ineffective[]" in allowing such conditions to fester. *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 74 (2d Cir. 2000) (internal citations omitted). Additionally, Plaintiff must allege conditions that were so objectively intolerable that a reasonable person in his position would have felt compelled to resign. *Petrosino*, 385 F.3d at 230 (internal citations omitted) (noting that courts must inquire into "whether the employer's deliberate actions rendered the employee's work conditions so intolerable as to compel resignation" and that "this issue is assessed objectively by reference to a reasonable person in the employee's position"). Constructive discharge claims present a high bar for plaintiffs to clear. *See Spires*, 2019 WL 4464393, at *9 (noting that constructive discharge claims present a "demanding standard"); *McGrier v. Cap. Cardiology*, No. 20-CV-1044 (BKS), 2022 WL 2105854, at *14 (N.D.N.Y. June 10, 2022) (stating that there is a "high bar necessary to allow a plausible inference [of a] constructive discharge"). For example, even where a plaintiff's supervisor "pursued with great diligence the administrative procedures necessary to fire [the plaintiff], while simultaneously avoiding the procedures that would have improved his performance to eliminate the need to fire him," a court in this Circuit found that the plaintiff "barely" met the standard for a constructive discharge claim. *Lunardini v. Mass. Mut. Life Ins. Co.*, 696 F. Supp. 2d 149, 163 (D. Conn. 2010).

Here, for all of the reasons that Plaintiff fails to state a hostile work environment claim, *see supra* Section II, he also fails to state a constructive discharge claim based upon the work environment he experienced. *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010) (internal citation omitted) ("The standard [for constructive discharge] is higher than the standard for establishing a hostile work environment. Because [plaintiff] failed to establish a hostile work environment, her claim of constructive discharge also fails.").

29

Nor does Plaintiff state a constructive discharge claim based upon Shutterstock's decision to deny Plaintiff's remote work request. "Courts have found that a drastic change in employment status or responsibilities can amount to a constructive discharge. Specifically, a demotion, particularly one that is accompanied by a significant loss of salary, prestige or responsibilities, or is otherwise humiliating, may also, on its own, give rise to a constructive discharge claim." *Bright-Asante v. Saks & Co., Inc.*, 242 F. Supp. 3d 229, 243 (S.D.N.Y. 2017), *aff'd*, 855 F. App'x 40 (2d Cir. 2021) (internal citation and quotation marks omitted). Plaintiff has alleged no such drastic change in employment status or responsibilities. Here, the denial of Plaintiff's remote work request may have been discouraging, but it would not have convinced a reasonable employee in Plaintiff's position that they had no choice but to resign, particularly because Quaglia reaffirmed that Shutterstock would help Plaintiff find a remote position elsewhere in the company so that Shutterstock would not "lose his talent." FAC ¶ 103.

For all the reasons noted above, a reasonable person in Plaintiff's situation would not have felt compelled to resign. Therefore, Plaintiff has not stated a claim for constructive discharge.

## IV.    Plaintiff States a Section 1981 Retaliation Claim Against Shutterstock

"Retaliation claims under Title VII and Section 1981 are both analyzed pursuant to Title VII principles and the *McDonnell Douglas* burden–shifting framework." *Littlejohn*, 795 F.3d at 315 (internal citation omitted). At the motion to dismiss stage, a plaintiff bringing a claim for retaliation must demonstrate "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* at 315–16 (internal citation omitted).

With respect to the first prong, to demonstrate that he engaged in protected activity, Plaintiff need only allege that "he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *See La Grande v. DeCrescente Distributing Co.,* 370 Fed. App'x 206, 212 (2d Cir. 2010) (internal citation omitted). With respect to the third prong, the concept of an adverse employment action is broader in the context of a retaliation claim than it is in the context of a discrimination claim. *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 309 (2d Cir. 2017) (internal citation omitted) (laying out the standard for an adverse employment action in the context of Title VII discrimination and retaliation claims); *see also Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 95–96, 101 (S.D.N.Y. 2023) (applying Title VII standards to Section 1981 discrimination and retaliation claims). In order to show an adverse employment action in the retaliation context, Plaintiff need only show that he suffered an employment action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Shultz*, 867 F.3d at 309 (internal citation omitted). Nonetheless, to establish an adverse employment action under Section 1981, Plaintiff must still demonstrate that he suffered more than "petty slights or trivial harms" and instead suffered an actual "injury or harm." *Id.* (internal citation omitted).

With respect to the fourth prong, Plaintiff can demonstrate a connection between his protected activity and any adverse employment actions he suffered either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against [him] by [Shutterstock]." *Littlejohn*, 795 F.3d at 319 (internal citation omitted). For the reasons discussed

below, Plaintiff adequately pleads a retaliation claim based upon his participation in ASAT and Defendant Garfield's response to ASAT.

Plaintiff alleges that Defendant Garfield's response to ASAT was an act of retaliation. Opp. at 15. Plaintiff easily satisfies the first prong (protected activity) of a retaliation claim here. Plaintiff's participation in ASAT was a protected activity because Plaintiff and his colleagues complained about racial discrimination during the presentation. FAC ¶¶ 53–56; *see Floyd v. New York Pub. Radio*, No. 23-CV-1096 (ALC), 2024 WL 1407058, at *5 (S.D.N.Y. Apr. 2, 2024) (citation and quotation marks omitted) ("An individual engages in protected activity under § 1981 when she complains about or otherwise opposes conduct that she reasonably believes to have violated § 1981.")

Plaintiff also satisfies the second prong (defendant's knowledge of protected activity). According to the Complaint, Shutterstock knew about the protected activity because senior leadership at the company discussed ASAT following the presentation. *Id.* ¶¶ 59–60.

Plaintiff satisfies the third prong (adverse action) as well. "[D]iscriminatory harassment from a supervisor may alone suffice to establish an adverse employment action" for the purposes of a retaliation claim. *Rivera v. Rochester Genessee Reg'l Transp. Auth.*, 743 F.3d 11, 26–27 (2d Cir. 2014) (internal citation omitted); *see also Berger-Rothberg v. City of New York*, 803 F. Supp. 2d 155, 166 (E.D.N.Y. 2011) (internal citations omitted) ("A hostile work environment itself can constitute an adverse employment action, the third prong required to establish retaliation."). Harassment that does not rise to the level of a hostile work environment in a Section 1981 discrimination claim – because it does not "alter the conditions of [a plaintiff's] employment," *Goins v. Bridgeport Hosp.*, 555 Fed. App'x 70, 72 (2d Cir. 2014) (internal citation omitted), – may still qualify as an adverse action for the purposes of a Section 1981 retaliation claim so long

as the harassment "could well dissuade a reasonable worker from making or supporting a charge of discrimination," *Shultz*, 867 F.3d at 309 (internal citation omitted).

Here, for the reasons noted in the hostile work environment section, *see supra* Section II(F), it is plausible that Defendant Garfield's statement was not a neutral assessment of ShADEs members, but was instead a discriminatory assessment that invoked racist tropes that Black workers are angry and unproductive. And, while Plaintiff himself continued to engage in protected activity shortly after Defendant Garfield's comments, many Black employees quit ShADEs in response to Defendant Garfield's comments. FAC ¶¶ 63, 65. Given the racially coded nature of Defendant Garfield's remarks, Defendant Garfield's position of power within Shutterstock, and the impact Defendant Garfield's remarks had upon ShADEs membership, it is plausible that Defendant Garfield's comments, as part of Shutterstock's negative response to ASAT, could (and, in fact, did) dissuade a reasonable employee from engaging in protected activity. This conclusion is further supported by Plaintiff's allegations that members of "senior HR" stated that Plaintiff would have been fired if he had mentioned any members of Shutterstock leadership by name during ASAT. *Id.* ¶ 64.

Finally, Plaintiff satisfies the fourth prong (causal connection between the protected activity and the adverse employment action). Defendant Garfield's comments, calling ShADEs members angry and unproductive, were specifically directed at Black employees' engagement in protected activity (complaints of racial discrimination). Therefore, there is a causal connection between Defendant Garfield's comments and Plaintiff's protected activity.

Because Plaintiff satisfies all four prongs of a retaliation claim based upon ASAT and Defendant Garfield's ensuing comments, Plaintiff's retaliation claim against Shutterstock may

proceed. Thus, the Court need not address at this stage whether Plaintiff could also state a

retaliation claim based upon any of the other complained-of incidents.[1]

## V.    Plaintiff States Section 1981 Discrimination Claims Against Defendants Birmingham and Garfield, But Not Against Defendant Graham

Having concluded the Section 1981 analysis with respect to claims against Shutterstock,

the Court now turns to the Section 1981 claims asserted against the Individual Defendants,

addressing the discrimination and retaliation claims in turn. Individuals are liable for

discrimination under Section 1981 only if the claim is "predicated on the actor's personal

involvement." *Whidbee*, 223 F.3d at 75 (internal citations omitted). An individual may be liable

for participating in a discrete adverse employment action, *see Littlejohn*, 795 F.3d at 314

(allowing a Section 1981 discrimination claim to proceed against an individual defendant

involved in demoting the plaintiff), or engaging in discriminatory acts that "giv[e] rise to a

hostile work environment," *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004); *see

also Jean-Louis v. Am. Airlines*, No. 08-CV-3898 (FB), 2010 WL 3023943, at *4 (E.D.N.Y. July

30, 2010) (collecting cases) (finding that an individual defendant "may be held liable under §

1981 if his actions contributed to creating a hostile work environment"). Arguments that an

individual defendant, "by virtue of their supervisory position[] . . . 'must have' approved" acts of

discrimination "are not sufficient to state a claim." *See Stevens v. New York*, 691 F. Supp. 2d 392,

401 (S.D.N.Y. 2009). But a supervisor may be held liable for gross negligence in the supervision

of subordinates who commit wrongful acts or if the supervisor receives information about

discrimination and fails to act. *Patterson*, 375 F.3d at 229. For the reasons discussed below,

---

[1] Plaintiff also argues that he can state a Section 1981 retaliation claim based upon the denial of his remote work request shortly after his complaints to Beecher, *see* FAC ¶¶ 95, 102, and based upon Defendant Graham's response to Plaintiff's complaints asking Plaintiff why he remained at Shutterstock if he was so unhappy, *id.* ¶ 107; Opp. at 15.

Plaintiff states Section 1981 discrimination claims against Defendants Birmingham and Garfield, but not against Defendant Graham.

### A. Plaintiff's Section 1981 Discrimination Claim Against Defendant Graham May Not Proceed

Plaintiff argues that Defendant Graham was personally involved in discrimination against Plaintiff based upon Defendant Graham's decision to assign Plaintiff an excessive amount of work and Defendant Graham's curt response to Plaintiff after Plaintiff complained about Shutterstock's lack of progress towards DEI goals. Opp. at 19. As noted above, an individual may be liable under Section 1981 for discrimination for participating in a discrete adverse employment action or engaging in discriminatory acts which contributed to creating a hostile work environment. Plaintiff establishes neither basis for liability against Defendant Graham.

First, Plaintiff sufficiently alleges that Defendant Graham was personally involved in the decision to assign excessive work to Plaintiff. FAC ¶ 77. However, as addressed above, Plaintiff does not state a discrete adverse employment action claim against Shutterstock based upon the workload he received. For the same reasons stated previously, *see supra* Section I(B), Plaintiff does not state a Section 1981 claim against Defendant Graham for assigning Plaintiff an excessive workload.

Second, it is axiomatic that Defendant Graham was personally involved in his own comment asking Plaintiff why Plaintiff remained at Shutterstock if he was so unhappy and believed nothing was changing. *Id*. ¶ 107. However, as discussed above, *supra* Section II(G–H), Defendant Graham's comment was not severe enough to create a hostile work environment on its own, nor was it part of a larger hostile work environment. Therefore, Plaintiff does not state a Section 1981 discrimination claim against Defendant Graham based on Defendant Graham's September 2021 comment.

Because Plaintiff fails to state a Section 1981 discrimination claim against Defendant

Graham based on either Plaintiff's workload or Defendant Graham's September 2021 comment,

Plaintiff's Section 1981 discrimination claim against Defendant Graham may not proceed.

### B.  Plaintiff's Section 1981 Discrimination Claim Against Defendant Birmingham May Proceed

Plaintiff argues that Defendant Birmingham was personally involved in discrimination

against Plaintiff based upon Defendant Birmingham's failure to respond to Plaintiff's complaints

of discrimination or meet with Plaintiff to discuss his complaints. Opp. at 19.

Plaintiff alleges that, at all relevant times, Defendant Birmingham "had the ability to

affect the terms and conditions of Plaintiff's employment." FAC ¶ 14. This allegation is plausible

given Defendant Birmingham's role as Shutterstock's Chief HR Officer. *Id.* ¶ 13. Therefore, for

the purposes of this Motion, Defendant Birmingham is considered a supervisor of Plaintiff. *See*

*Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) (holding that a coworker who was

"empowered by the employer to take tangible employment actions against the [plaintiff]" was a

supervisor in the context of workplace discrimination claims). Thus, Defendant Birmingham is

liable for discrimination if she knew racial discrimination was occurring but nonetheless failed to

act. *Patterson*, 375 F.3d at 229 ("Personal involvement [under Section 1981] . . . includes not

only direct participation in the alleged violation but also gross negligence in the supervision of

subordinates who committed the wrongful acts and failure to take action upon receiving

information that constitutional violations are occurring." ); *see also Gurley v. David H. Berg &*

*Associates*, No. 20-CV-9998 (ER), 2022 WL 309442, at *6–7 (S.D.N.Y. Feb. 2, 2022) (applying

the same standard as in *Patterson* for personal involvement to Section 1981 discrimination claim

against a non-government employer).

The Complaint alleges that Defendant Birmingham received an email in August 2020 that made her aware "of [Plaintiff's] complaints regarding discrimination and uncompensated labor." FAC ¶ 108. Therefore, according to Plaintiff, Defendant Birmingham was aware in August 2020 of Plaintiff's complaints regarding discrimination, including, at minimum, Plaintiff's complaints regarding disparate pay. *Id.* These complaints were not addressed. *Id.* ¶¶ 21, 71, 95–96. Additionally, even after Defendant Birmingham received an email containing these complaints, Plaintiff's many attempts to try and schedule a meeting with Defendant Birmingham failed, at times due to the fact that HR had not taken down an inoperative sign-up form that employees were once encouraged to use to schedule meetings, and later because Defendant Birmingham's staff never scheduled a meeting despite Defendant Birmingham's promise that they would do so. *Id.* ¶ 93. Because Defendant Birmingham was on notice of legitimate complaints of discrimination, and did not act to change the complained-of practices or provide an avenue for Plaintiff to voice additional complaints, Plaintiff has adequately pled that Defendant Birmingham was personally involved in discrimination. Therefore, Plaintiff's Section 1981 discrimination claim against Defendant Birmingham may proceed.

### C.  Plaintiff's Section 1981 Discrimination Claim Against Defendant Garfield May Proceed

Plaintiff argues that Defendant Garfield was personally involved in discrimination against Plaintiff based upon Defendant Garfield's negative comments following ASAT and Defendant Garfield's failure to act upon Plaintiff's complaints about discrimination. Opp. at 18.

As noted above, *see supra* Section II(F, H), Defendant Garfield's comments following ASAT were not severe enough to create a hostile work environment on their own, nor were they part of a larger hostile work environment. Therefore, Plaintiff does not state a Section 1981 discrimination claim against Defendant Garfield based on her comments following ASAT.

However, per the same reasoning set forth above, Plaintiff has adequately pled that Defendant Garfield was Plaintiff's supervisor. *See supra* Section II(F); *see also* FAC ¶¶ 15–16. Therefore, Defendant Garfield is individually liable if she was on notice of discrimination and failed to act. *See Patterson*, 375 F.3d at 229. Here, according to Plaintiff, Defendant Garfield was aware of complaints about disparate pay and not only failed to act but also remarked that employees making these complaints had poor time management skills. FAC ¶¶ 59–60. Based on Defendant Garfield's response to these complaints, Plaintiff's Section 1981 discrimination claim against Defendant Garfield may proceed.

## VI. Plaintiff States a Section 1981 Retaliation Claim Against Defendant Garfield, But Not Against the Other Individual Defendants

"An individual may be held liable for retaliation under Section 1981 if that individual is personally involved in the alleged deprivation." *McFadden v. Cnty. Of Monroe*, 672 Fed. App'x 81, 83 (2d Cir. 2016) (cleaned up). This standard mirrors the one applied to the discrimination claims against Individual Defendants. Therefore, the Court similarly analyzes the retaliation claims against Individual Defendants: by determining if any of the three Individual Defendants were personally involved in acts of retaliation against Plaintiff. For the reasons discussed below, the Court finds that Plaintiff has not stated retaliation claims against Defendants Graham and Birmingham. However, the Court finds that Plaintiff's retaliation claim against Defendant Garfield survives the Motion.

### A. Plaintiff Fails to State a Section 1981 Retaliation Claim Against Defendant Graham

Plaintiff argues that Defendant Graham was personally involved in retaliation against Plaintiff based upon Defendant Graham's decision to assign Plaintiff an excessive amount of work and based upon Defendant Graham's curt response to Plaintiff after Plaintiff complained about Shutterstock's lack of progress towards DEI goals. Opp. at 19. Plaintiff's Complaint also

alleges that, after Plaintiff's counsel sent Shutterstock a litigation letter, Defendant Graham retaliated against Plaintiff by telling Plaintiff's former coworkers that Plaintiff may not be a "friend" and that Plaintiff had spread rumors about other employees. FAC ¶ 118. Plaintiff fails to state a retaliation claim against Defendant Graham on any of these bases.

First, Plaintiff fails to state a retaliation claim against Defendant Graham based on Plaintiff's workload. A heavy workload only qualifies as an adverse employment action in the context of a retaliation claim if the plaintiff alleges that he or she received a workload that was heavier than the workloads of similarly situated employees who did not engage in protected behavior. *Kirkland-Hudson v. Mount Vernon City School District*, 665 F. Supp. 3d 412, 460 (S.D.N.Y. 2023). Here, Plaintiff alleges that his workload significantly exceeded his job title but does not claim that any similarly situated employees who did not engage in protected activity received a less severe workload. FAC ¶¶ 76–78. Therefore, Plaintiff fails to state a retaliation claim against Defendant Graham on this basis.

Second, Plaintiff fails to state a retaliation claim against Defendant Graham based on Defendant Graham's response to Plaintiff's litigation letter. Only a narrow range of post-employment actions may serve as the basis for a retaliation claim. *See Jiang Zhong Li v. Oliver King Enters.*, No. 14-CV-9293 (VEC), 2015 WL 4643145, at *4 (S.D.N.Y. Aug. 4, 2015) (noting absence of post-employment retaliation cases in the Second Circuit or elsewhere that did not involve either employment-related harm or a threatened legal claim against the plaintiff); *see also Calise v. Casa Redimix Concrete Corp.*, No. 20-CV-7164 (PAE), 2022 WL 355665, at *6 (S.D.N.Y. Feb. 4, 2022) (recognizing that blacklisting can constitute a post-employment retaliatory adverse employment action). Here, the Court is not persuaded to expand the range of post-employment retaliation claims to include situations in which an employer merely tells a

plaintiff's former coworkers that the plaintiff spreads rumors and is not a true friend. Such gossip is just the sort "petty slight[]" or "trivial harm[]" that does not rise to the level of an adverse employment action under the federal employment discrimination laws. *See Shultz*, 867 F.3d at 309.

Third, Plaintiff fails to state a retaliation claim against Defendant Graham based on Defendant Graham's September 2021 comment asking Plaintiff why Plaintiff remained at Shutterstock if he was so unhappy and believed nothing was changing. FAC ¶ 107. Defendant Graham's comment is insufficient on its own to dissuade a reasonable employee from engaging in protected activity. *See Shultz*, 867 F.3d at 309 (noting that "petty slights" or "trivial harms" do not rise to the level of adverse employment actions for the purposes of a federal retaliation claim). Additionally, although Defendant Graham's comment indicated a disinterest in investigating or addressing Plaintiff's complaint, such disinterest alone does not suffice to establish an adverse employment action for the purposes of a federal retaliation claim. *See Fincher v. Depository Tr. & Cleaning Corp.*, 604 F.3d 712, 721–22 (2d Cir. 2010) ("[F]ailure to investigate a complaint of discrimination cannot be considered an adverse employment action.").

Thus, Plaintiff fails to state a Section 1981 retaliation claim against Defendant Graham.

**B.  Plaintiff Fails to State a Section 1981 Retaliation Claim Against Defendant Birmingham**

Plaintiff argues that Defendant Birmingham retaliated against Plaintiff by failing to appropriately respond to his complaints of discrimination and by failing to meet with him to discuss further complaints. Opp. at 19. Neither basis is sufficient to state a Section 1981 retaliation claim against Defendant Birmingham.

First, Defendant Birmingham received an email in August 2020 detailing Plaintiff's discrimination complaints, including his complaints regarding discriminatory disparate pay. FAC

¶ 108. However, under federal retaliation law, a failure to respond to a complaint cannot by itself serve as retaliation for the filing of that same complaint. *See Fincher*, 604 F.3d at 721–22. Therefore, Plaintiff's claim cannot go forward on this basis.

Second, Defendant Birmingham's repeated failure to meet with Plaintiff does not suffice to state a retaliation claim. Failures to investigate can serve as adverse employment actions when the employer/supervisor failed to investigate a subsequent complaint in retaliation for an employee's decision to file an initial complaint. *Id.* at 722 (noting that a failure to investigate can be an adverse employment action "if the failure is in retaliation for some separate, protected act by the plaintiff"). However, Defendant Birmingham's repeated evasions of Plaintiff here occurred at least eight months following the August 2020 email sent to Defendant Birmingham, and Plaintiff was promoted during those eight months. FAC ¶¶ 67, 72, 83.[2] There is no bright line for when a temporal gap is too long to support an inference of retaliatory animus, which allows this Court to "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (recognizing that the Second Circuit has found causation in one case where eight months lapsed between the protected activity and the adverse employment action but declined to find causation in a different case where three months lapsed between the protected activity and the adverse employment action). A gap of eight months is on the long end of the temporal gaps that courts have found to satisfy temporal proximity for the purpose of causation in a retaliation claim. *See Uddin v. City of New York*, 427 F. Supp. 2d 414, 434 (S.D.N.Y. 2006) ("Any alleged

---

[2] Because Plaintiff began trying to reach Defendant Birmingham using the inoperative sign-up form in April 2021, but did not speak to Defendant Birmingham personally until August 2021, Defendant Birmingham's evasion arguably began a year after Plaintiff's August 2020 complaints. FAC ¶¶ 67, 83, 93.

actions that took place more than nine months after the last alleged protected activity . . . are too remote to establish a causal connection."); *Ball v. Marriott Int'l, Inc.*, 627 F. Supp. 3d 296, 323 (S.D.N.Y. 2022) ("[M]ore than nine months is too long a time to establish [a] causal relationship"); *Anderson v. New York City Dep't of Fin.*, No. 19-CV-7971 (RA), 2020 WL 1922624, at *8 (S.D.N.Y. Apr. 21, 2020) (finding that nine months "is significantly more time than courts typically permit to establish temporal proximity"). The eight-month gap between the protected activity and alleged retaliation, coupled with Plaintiff's promotion, renders it implausible that Defendant Birmingham failed to meet with Plaintiff due to retaliatory animus. Therefore, Plaintiff has not stated a Section 1981 retaliation claim against Defendant Birmingham.

### C. Plaintiff's Section 1981 Retaliation Claim Against Defendant Garfield May Proceed

Plaintiff argues that Defendant Garfield personally engaged in retaliation against Plaintiff by making negative comments about ShADEs members following ASAT. Opp. at 18–19. As noted above, Defendant Garfield's comments following ASAT provide the basis for a retaliation claim. *See supra* Section IV. It is axiomatic that Defendant Garfield was personally involved in comments that she herself made. Because Defendant Garfield was personally involved in an act of retaliation against Plaintiff, Plaintiff's retaliation claim against Defendant Garfield may proceed.

### VII. Plaintiff States NYCHRL Claims for Discrimination and Retaliation Against Shutterstock

The Court now turns to the NYCHRL claims, addressing the claims against Shutterstock and the Individual Defendants in turn. The NYCHRL claims are subject to a different standard than the federal claims, and therefore this Court must "analyze NYCHRL claims separately and

independently" from Plaintiff's Section 1981 claims. *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

### A.  NYCHRL Discrimination Claims Against Shutterstock

Plaintiff alleges that Shutterstock's acts of discrimination and retaliation also violated the NYCHRL. FAC ¶¶ 121–42. The Court first addresses the NYCHRL discrimination claims. The standard to plead a discrimination claim under the NYCHRL is lower than under federal law. *Mihalik*, 715 F.3d at 110 (stating that, under the NYCHRL, "[t]o prevail on liability, the plaintiff need only show differential treatment – that [he] is treated 'less well' – because of a discriminatory intent"). Plaintiffs face a more permissive standard under the NYCHRL than under Section 1981 because plaintiffs are not "requir[ed] to show [that] an adverse employment action" occurred. *McHenry v. Fox News Networks, LLC*, 510 F. Supp. 3d 51, 67 (S.D.N.Y. 2020) (citing *Xiang v. Eagle Enterprises, LLC*, No. 19-CV-1752 (PAE), 2020 WL 248941, at *9 (S.D.N.Y. Jan. 16, 2020)).

Under the NYCHRL, an employer is liable for the discriminatory acts of non-supervisory employees only if:

> the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or [. . .t]he employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

N.Y.C. Admin Code § 8-107(13)(b).

The Court finds that Plaintiff states NYCHRL discrimination claims against Shutterstock based upon denial of Plaintiff's remote work request, discriminatory compensation, and a hostile

work environment. However, Plaintiff fails to state NYCHRL discrimination claims against Shutterstock based upon a failure to promote, an excessive workload, or constructive discharge.

### 1. Plaintiff States a Discrimination Claim Against Shutterstock Under the NYCHRL Based Upon Denial of His Remote Work Request

Plaintiff alleges that he was denied the opportunity to continue working remotely from his position, even while White employees in his department were allowed to continue working remotely. FAC ¶¶ 85, 102. Plaintiff does not mention whether these employees held similar responsibilities and does not state whether any of these employees had their remote work positions revoked in the manner that Plaintiff did. But, drawing all inferences in Plaintiff's favor, as the Court must at this juncture, Plaintiff has established a discrimination claim under the NYCHRL. Unlike Section 1981, no adverse employment action is required for this claim, and Plaintiff has plausibly alleged he was treated less well based on race. *See Mihalik*, 715 F.3d at 114 (noting that "the NYCHRL does not require . . . materially adverse employment actions . . . [and instead focuses on] unequal treatment based on [a protected characteristic]"). As occurred here, an employee who is asked to choose between working remotely and finding a new position is treated less well than an employee who is allowed to continue working remotely from their current position. Because Plaintiff's remote work authorization was rescinded, while White colleagues in his department were allowed to continue working remotely, it is plausible that Plaintiff was treated less well for discriminatory reasons. Thus, Plaintiff states a NYCHRL discrimination claim on this basis.

### 2. Plaintiff States a Discrimination Claim Against Shutterstock Under the NYCHRL Based Upon Discriminatory Compensation

For all the reasons that Plaintiff states a claim for discriminatory compensation under Section 1981, Plaintiff also states a claim for discriminatory compensation under the more permissive standards of the NYCHRL. *See Torre v. Charter Commc'ns, Inc.,* 493 F. Supp. 3d

276, 284–85 (S.D.N.Y. 2020) (finding that discriminatory compensation can support a

discrimination claim under the NYCHRL).

### 3. Plaintiff States a Discrimination Claim Against Shutterstock Under the NYCHRL Based Upon a Hostile Work Environment

Plaintiff alleges that he experienced a hostile work environment under the NYCHRL for

all of the reasons that he alleges that he experienced a hostile work environment under Section

1981. Opp. at 7–12. However, unlike Section 1981, the NYCHRL does not require severe or

pervasive misconduct to establish a hostile work environment claim; an employee need only

show that they were treated "less well" because of a protected characteristic. *See Mihalik*, 715

F.3d at 110. Plaintiff has plausibly alleged that he was treated less well based on race.

The Court first notes that Shutterstock is still not liable under a NYCHRL hostile work

environment claim for many of the incidents in the Complaint. Just as Plaintiff was unable to

impute liability to Shutterstock under Section 1981 for the incidents of hair touching, comments

about Plaintiff's family origin, or complaints regarding Black employees "congregating" during

lunch, *see supra* Section II(A)–(C), he is unable to impute liability to Shutterstock for these

incidents under the NYCHRL. *See* N.Y.C. Admin Code § 8-107(13)(b) (laying out standard to

impute liability to an employer under the NYCHRL). And, just as Plaintiff did not allege a

sufficient nexus between the discharge of other employees and his own workplace treatment

under Section 1981, *see supra* Section II(D), Plaintiff does not do so under the NYCHRL.

However, for all the reasons discussed in the Section 1981 hostile work environment

analysis, *supra* Section II(E–G), Plaintiff plausibly alleges that Shutterstock is liable for three

workplace incidents that occurred under circumstances giving rise to a plausible inference of

discrimination: (1) Shutterstock's refusal to remove blackface images from its content library in

violation of Shutterstock's own policy, (2) Defendant Garfield's comments following ASAT, and

(3) Defendant Graham's September 2021 comment. Based upon these conditions, it is plausible that Plaintiff was treated less well due to his race. Thus, Plaintiff's hostile work environment claim under the NYCHRL may proceed.

### 4. Plaintiff Fails to State a Discrimination Claim Against Shutterstock Under the NYCHRL Based Upon a Failure to Promote

Even under the NYCHRL, a plaintiff cannot state a failure to promote claim for a position to which they did not apply. *See Mullins v. Consol. Edison Co. of N.Y., Inc.*, No. 13-CV-6800 (LGS), 2015 WL 4503648, at *1, 9 (S.D.N.Y. July 22, 2015) (granting summary judgment for the defendant on a failure to promote claim where the plaintiff did not apply to some of the positions that he complained about not receiving; *Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 294–95, 300 (S.D.N.Y. Feb. 7, 2012) (same). Therefore, for the same reasons discussed under Section 1981, *see supra* Section I(A), Plaintiff has not stated a failure to promote claim under the NYCHRL.

### 5. Plaintiff Fails to State a Discrimination Claim Against Shutterstock Under the NYCHRL Based Upon an Excessive Workload

An excessive workload can support a discrimination claim under the NYCHRL. *See Craven v. City of New York*, No. 19-CV-1486 (JMF), 2020 WL 2765694, at *4–5 (S.D.N.Y. May 28, 2020). However, under the NYCHRL, Plaintiff still must plausibly allege that he received excessive work due to a "discriminatory motive." *Mihalik*, 715 F.3d at 110. Plaintiff fails to do so here because he does not claim that similarly situated non-Black employees received a less onerous workload. FAC ¶¶ 76–78. And, Plaintiff fails to allege any other plausible basis for a discriminatory motive here. Therefore, Plaintiff fails to state a discrimination claim based upon an excessive workload under the NYCHRL.

### 6. Plaintiff Fails to State a Discrimination Claim Against Shutterstock Under the NYCHRL Based Upon Constructive Discharge

The Second Circuit has noted that, even while New York state appellate courts have not determined the precise standard for constructive discharge under the NYCHRL, they tend to dispose of constructive discharge claims using language that "mirrors the federal standard." *Tulino v. City of New York*, 813 Fed. App'x 725, 727 n.2 (2d Cir. 2020). Since that decision, New York appellate departments have continued to dispose of NYCHRL constructive discharge claims using language that mirrors the federal standard. *See Blackman v. Metro. Transit Auth.*, 169 N.Y.S.3d 653, 656 (2d Dep't 2022) (internal citation omitted) (disposing of a NYCHRL constructive discharge claim while stating that "[a]n employee is constructively discharged when her or his employer, rather than discharging the plaintiff directly, deliberately created working conditions so intolerable that a reasonable person in the plaintiff's position would have felt compelled to resign").

Accordingly, the Court finds that Plaintiff cannot maintain a NYCHRL constructive discharge claim for all of the reasons set forth under the Section 1981 constructive discharge analysis. *See supra* Section III.

### B. Plaintiff's NYCHRL Retaliation Claim Against Shutterstock

To state a retaliation claim under the NYCHRL, a plaintiff merely needs to allege that they opposed their employer's discrimination and that the employer then took actions against them which would be "reasonably likely to deter a person from engaging in [that opposition]." *Mihalik*, 715 F.3d at 112 (internal citations omitted). Plaintiffs face a more permissive standard under the NYCHRL than under Section 1981 because plaintiffs are not "requir[ed] to show [that] an adverse employment action" occurred. *McHenry*, 510 F. Supp. 3d at 67 (citing *Xiang*, 2020 WL 248941, at *9). To qualify as retaliatory, an employer's action need not qualify as a

"materially adverse change in terms and conditions of employment," and courts should be cognizant that the "'chilling effect' of particular conduct is context-dependent." *Williams v. N.Y.C. Housing Auth.*, 872 N.Y.S.2d 27, 34 (1ˢᵗ Dep't 2009). The plaintiff still has the duty to establish that the employer's actions were motivated "at least in part by . . . retaliatory motives." *Padilla v. Yeshiva Univ.*, 691 Fed. App'x 53, 55 (2d Cir. 2017) (quoting *Mihalik*, 715 F.3d at 113). Even under the NYCHRL, a failure to discontinue the complained-of behavior does not itself qualify as an act of retaliation. *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 40, 42 (1ˢᵗ Dep't 2012) (internal citation omitted) ("[A]n employer's continuation of a course of conduct that had begun before the employee complained does not constitute retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct."). "When considering causation, courts apply the same temporal-proximity analysis to NYCHRL . . . retaliation claims as they do to [federal discrimination claims]." *Kraiem v. Jones Trading Inst. Services LLC*, 571 F. Supp. 3d 53, 60 (S.D.N.Y. 2021).

Here, Plaintiff argues that he was retaliated against under the NYCHRL for all the reasons that he was retaliated against under Section 1981. Opp. at 12–15. As this Court already decided that Plaintiff states a retaliation claim under Section 1981, Plaintiff surely states a retaliation claim under the more permissive standards of the NYCHRL.

## VIII.  NYCHRL Claims Against the Individual Defendants

The Court now turns to the NYCHRL claims against the Individual Defendants. The NYCHRL provides two bases of liability for individual defendants who contribute to workplace discrimination or retaliation. First, it is unlawful for any employee, "regardless of ownership or decisionmaking power," to directly engage in discrimination or retaliation. *Malena v. Victoria's*

*Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012). Second, an employee is liable for aiding and abetting discrimination or retaliation if they "actually participate[d] in the conduct giving rise to the plaintiff's discrimination or retaliation claim." *Malena*, 886 F. Supp. 2d at 367 (cleaned up) (applying the standard of actual participation to cases where a claim is brought against an employee for aiding and abetting retaliation). Employees are liable for aiding and abetting their employer's discriminatory conduct if "they were responsible for the underlying conduct giving rise to direct liability for their employer." *Colbert v. FSA Store, Inc.*, No. 19-CV-9828 (LJL), 2020 WL 1989404, at *5 (S.D.N.Y. Apr. 27, 2020) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995)).

A supervisor who knows of harassment and fails to act is subject to aiding and abetting liability under the NYCHRL. *See Rossbach v. Montefiore Med. Ctr.*, No. 19-CV-5758 (DLC), 2021 WL 930710, at *8 (S.D.N.Y. Mar. 11, 2021) (internal citations omitted). At the motion to dismiss stage, courts typically allow claims for both direct liability and liability for aiding and abetting to proceed if a plaintiff adequately alleges an individual defendant's personal participation in discrimination or retaliation. *Id.* at *5–6 ("The Court need not determine at this stage whether a jury verdict holding [the individual defendant] liable both as a principal and as an aider and abettor would be supportable.").

For the reasons discussed below, the Court finds that Plaintiff may proceed with only a NYCHRL discrimination claim against Defendant Birmingham but may proceed with NYCHRL discrimination and retaliation claims against both Defendants Graham and Garfield.

### A.  NYCHRL Claims Against Defendant Graham

Plaintiff argues that Defendant Graham was personally involved in discrimination and retaliation under the NYCHRL against Plaintiff based upon Defendant Graham's decision to

assign Plaintiff an excessive amount of work and based upon Defendant Graham's curt response
to Plaintiff in September 2021 after Plaintiff complained about Shutterstock's lack of progress
towards DEI goals. Opp. at 19. Plaintiff's Complaint also alleges that, after Plaintiff's counsel
sent Shutterstock a litigation hold letter, Defendant Graham retaliated against Plaintiff by telling
Plaintiff's former coworkers that Plaintiff may not be a "friend" and that Plaintiff had spread
rumors about other employees. FAC ¶¶ 117–18.

For all the reasons that Plaintiff's excessive workload does not state a discrimination
claim against Shutterstock under the NYCHRL, it likewise fails to state an individual
discrimination claim against Defendant Graham under the NYCHRL for either direct liability or
aiding and abetting liability.

However, because Defendant Graham's September 2021 comment was made in response
to a complaint about discrimination, FAC ¶ 106, it is plausibly shaded with discriminatory
animus. Although the comment may seem comparatively slight, under the NYCHRL, an
argument that plaintiff's allegations amount to no more than "petty slights and trivial
inconveniences" is an affirmative defense that is not available at the motion to dismiss stage. *See
Sanderson v. Leg Apparel LLC*, No. 1:19-CV-8423 (GHW), 2020 WL 7342742, at *8 (S.D.N.Y.
Dec. 14, 2020) (collecting cases). Defendant Graham's comment could also plausibly dissuade a
reasonable employee from engaging in protected activity. Thus, Defendant Graham's September
2021 comment provides a basis for individual retaliation and discrimination claims against
Defendant Graham under the NYCHRL for either direct liability or aiding and abetting liability.
While Plaintiff does not state a retaliation claim against Defendant Graham under Section 1981,
*see supra* Section V(A), Plaintiff states retaliation claims against Defendant Graham based on
this comment under the broader standards of the NYCHRL. *See Ya-Chen Chen v. City Univ. of*

*N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (internal citations omitted) (noting that "NYCHRL's retaliation provision is broader than [provisions under federal law]").

However, Plaintiff's excessive workload fails to establish a retaliation claim under the NYCHRL, because, for all the reasons explained in the Section 1981 analysis, *see supra* Section VI(A), there is no indication that the assignment of this workload was related to Plaintiff's protected activity.

Additionally, Plaintiff does not state a retaliation claim against Defendant Graham under the NYCHRL based upon Defendant Graham's comments about Plaintiff following the litigation hold letter. Although post-employment actions such as blacklisting can constitute retaliatory adverse employment actions under the NYCHRL, *see Calise v. Casa Redimix Concrete Corp.*, No. 20-CV-7164 (PAE), 2022 WL 355665, at *6 (S.D.N.Y. Feb. 4, 2022), Plaintiff has not demonstrated why Defendant Graham's post-employment remarks about him somehow "discourage[d] [his] participation in protected activity" or interfered with his future employment opportunities, *Cadet v. Alliance Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202, 236 (S.D.N.Y. 2022) (dismissing NYCHRL retaliation claim premised on post-termination event). Accordingly, Plaintiff does not state a NYCHRL retaliation claim against Defendant Graham based on Defendant Graham's comments following the litigation hold letter.

### B.  NYCHRL Claims Against Defendant Birmingham

Plaintiff argues that Defendant Birmingham was personally involved in discrimination and retaliation under the NYCHRL based upon Defendant Birmingham's failure to respond to the complaints of discrimination Defendant Birmingham received and Defendant Birmingham's failure to meet with Plaintiff to discuss his complaints. Opp. at 19.

For all the reasons that Plaintiff states a discrimination claim based upon Defendant Birmingham's failure to respond to complaints of discrimination under Section 1981, *see supra* Section V(B), Plaintiff also states a discrimination claim under the more permissive standards of the NYCHRL.

However, for all the reasons discussed in the Section 1981 retaliation analysis, *see supra* Section VI(B), Plaintiff does not adequately plead any connection between Defendant Birmingham's actions and any protected activity. *See Kraiem*, 571 F. Supp. 3d at 60 (demonstrating that, under the NYCHRL, courts apply the same analysis with regards to retaliation and temporal proximity as under Section 1981). Therefore, Plaintiff's NYCHRL retaliation (and aiding and abetting retaliation) claims against Defendant Birmingham may not proceed.

### C.  NYCHRL Claims Against Defendant Garfield

For the same reasons that Plaintiff states discrimination and retaliation claims against Defendant Garfield under Section 1981, Plaintiff may also maintain those claims under the more permissive standards of the NYCHRL. *See Mihalik*, 715 F.3d at 109 (internal citation and quotation marks omitted) ("[F]ederal civil rights statutes can serve only as a floor below which the [NYCHRL] cannot fall.").

### IX.  NYSHRL Claims Against Shutterstock

The Court next addresses Plaintiff's state law claims, turning first to the NYSHRL claims against Shutterstock. Prior to 2019, both discrimination and retaliation claims were subject to the same analysis under Section 1981 and the NYSHRL. *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 228 (E.D.N.Y. 2018) (citing *Bermudez v. City of N.Y.*, 783 F.Supp.2d 560, 576 (S.D.N.Y. 2011)); *see also Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296, 311 (S.D.N.Y.

2016) (noting that the analysis for hostile work environment claims was the same under both Section 1981 and the NYSHRL); *see also Spires v. Metlife Grp., Inc*., No. 18-CV-4464 (RA), 2019 WL 4464393, at *9 (S.D.N.Y. Sept. 18, 2020) (internal citation omitted) (noting that the analysis for constructive discharge claims was the same under both Section 1981 and the NYSHRL). However, the legislature amended the NYSHRL in 2019, and thus any claims based upon acts of discrimination or retaliation that occurred after October 11, 2019 are analyzed under a different standard. *See Wheeler v. Praxair Surface Techs., Inc.*, No. 21-CV-1165 (PAE), 2023 WL 6282903, at *10 (S.D.N.Y. Sept. 26, 2023) (noting that amendments to the NYSHRL "broadened its reach"); *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (noting that the amendments directed courts to construe the NYSHRL "liberally for the accomplishment of the remedial purposes thereof," without referencing similarly worded federal statutes); *Arazi v. Cohen Brothers Realty Corp.*, No. 20-CV-8837 (GHW), 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022) (noting that the reach of the NYSHRL has also broadened in the retaliation context). "The case law, however, has yet to definitively resolve whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL, or whether it requires more, so as to impose a standard between federal and city law." *Wheeler*, 2023 WL 6282903, at *10 (collecting cases). The parties do not address this issue in their briefs. Thus, the Court will apply the NYCHRL standard to post-2019 NYSHRL claims at this stage but will not foreclose Defendant from arguing a different interpretation of the NYSHRL at a later stage of litigation. *Id.* at *11 (applying a similar analysis).

### A.  Pre-2019 NYSHRL Claims Against Shutterstock

Plaintiff only complained of four incidents that occurred prior to October 2019. For the reasons stated under the hostile work environment analysis, *see supra* Section II(A)–(C),

Plaintiff has not pled facts sufficient to impute liability to Shutterstock under Section 1981 for the acts of hair touching, the comments regarding Plaintiff's family origin, and the complaints about Black employees congregating during lunch. For all of the same reasons, Plaintiff also does not plead facts sufficient to impute liability to Shutterstock for these acts under the NYSHRL. *See Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 307 (S.D.N.Y. 2015) (internal citation omitted) (stating that under the NYSHRL, "an employer is only liable for conduct that it encouraged, condoned, or expressly or impliedly approved"). Moreover, just as Plaintiff does not establish that the discharge of four of his coworkers contributed to a hostile work environment under Section 1981, *see supra* Section II(D), Plaintiff does not do so under the NYSHRL. *See Johnson*, 224 F. Supp. 3d at 311. Therefore, Plaintiff does not state any NYSHRL claims against Shutterstock arising from pre-2019 events.

### B. Post-2019 NYSHRL Claims Against Shutterstock

Plaintiff's other NYSHRL claims against Shutterstock are all governed by the same standard as the NYCHRL. Therefore, each claim rises or falls with the NYCHRL, as discussed above.

### X. NYSHRL Claims Against Individual Defendants

The standard for holding an individual defendant liable for discrimination, retaliation, or aiding and abetting discrimination or retaliation under the NYSHRL is the same as under the NYCHRL. *Malena*, 886 F. Supp. 2d at 365–67 (outlining the different ways in which an individual can be liable under the NYSHRL). However, under the NYSHRL, individual defendants are only directly liable for employment discrimination if the individual had an ownership interest in the employer company or if the individual had the "authority to hire and fire employees." *Id*. at 365–66 (collecting cases). Where an individual defendant has directly

participated in discrimination, and thus would at least be liable for aiding and abetting discrimination, courts defer the question of the individual's ownership interest and authority until a later stage of litigation. *Ahmad v. New York City Health & Hosps. Corp.*, No. 20-CV-675 (PAE), 2021 WL 1225875, at *15 (S.D.N.Y. Mar. 31, 2021*)* ("[T]he Court defers until after discovery the question of whether [the defendant] may be individually liable as an 'employer' or an 'aider and abettor.'").

Therefore, because the standard for direct participation is the same under both the NYSHRL and the NYCHRL, and because all acts committed by the Individual Defendants occurred after October 11, 2019 – and thus are subject to the same discrimination and retaliation standards under the NYSHRL and NYCHRL – each NYSHRL claim against the Individual Defendants rises or falls with the corresponding NYCHRL claim against the Individual Defendants discussed above. *See supra* Section VIII.

## XI.    NYSEPA Claims Against Shutterstock

Plaintiff also alleges that Shutterstock violated the NYSEPA. FAC ¶¶ 147–51. "An equal pay claim under [NYSEPA] is analyzed under the same standards applicable to the federal Equal Pay Act." *Pfeiffer v. Lewis Cnty.*, 308 F. Supp. 2d 88, 98 n.8 (N.D.N.Y. 2004) (internal citations omitted). Thus, to prove a violation of the NYSEPA, a plaintiff must demonstrate that (1) the employer pays different wages to employees [based on a protected characteristic]; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions. *E.E.O.C. v. Port Auth. of N.Y. and N.J.*, 768 F.3d 247, 254–55 (2d Cir. 2014) (internal citation and quotation marks omitted). This standard calls for Plaintiff to plead more specific facts than under his Section 1981 discriminatory compensation claim. *Compare id.* (finding that, in the context of an Equal Pay Act

claim, a Plaintiff must allege that he is receiving lower wages than a similarly situated employee outside of his protected class who is performing similar work), *with Lenzi v. Systemax, Inc.*, 944 F.3d 97, 110 (2d Cir. 2019) (finding that, in the context of a federal employment discrimination claim, a plaintiff "alleging a discriminatory compensation practice need not establish that [he] performed equal work for unequal pay").[3] To state a NYSEPA claim, Plaintiff cannot simply rely on allegations that his employer paid ShADEs employees less than the employer *would have* paid non-Black employees who did the same work. *Compare supra* section I(D). Instead, Plaintiff must allege that he actually received lower wages than similarly situated non-Black employee[s] who performed similar work, *i.e.*, equal work for unequal pay. *E.E.O.C.*, 768 F.3d at 254–55.

The Second Circuit has reserved judgment on whether a plaintiff must identify a specific comparator at the pleading stage for a NYSEPA claim. *See Lavin–McEleney v. Marist Coll.,* 239 F.3d 476, 480 (2d Cir. 2001). However, courts in the Second Circuit have generally set a high bar for plaintiffs to successfully plead a claim in which they do not identify specific comparators. *Compare Solomon v. Fordham Univ. Admin., Rose Hill Campus*, No. 22-CV-887, 2023 WL 5689712, at *3 (2d Cir. Sept. 5, 2023) (reversing dismissal of a federal Equal Pay Act claim where the plaintiff provided the Court with a list of similarly situated coworkers but did not provide the names and specific job duties of those coworkers), *with Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238, 243–44 (S.D.N.Y. 2001) (granting dismissal of a NYSEPA claim where plaintiff alleged that male employees were paid more for equal work and provided a list of

---

[3] In *Lenzi*, the Court analyzed discriminatory compensation under Title VII. However, for the reasons discussed above, *supra* Section I(D), discriminatory compensation claims under Title VII and Section 1981 receive the same analysis.

male employees to defendant but failed to allege details about how those male employees were similarly situated).

Here, Plaintiff relies on the same allegations as he did for his discriminatory compensation claim. Opp. at 20–21. However, Plaintiff's allegations do not identify any particular non-Black employee(s) who were paid for DEI work. FAC ¶¶ 42–43. Nor did Plaintiff identify ways in which non-Black employees who received payment for DEI work were similarly situated to him at the company. *Id*. Plaintiff's allegations also do not state that HR Rep. Wang spoke to either of these issues. *Id.* ¶ 70. Thus, while Plaintiff states a Section 1981 claim for discriminatory compensation (which does not require a showing of equal work for unequal pay), Plaintiff's allegations do not suffice to support an inference that Plaintiff received less pay than similarly situated non-Black employees who performed the same work. Therefore, Plaintiff has not satisfied the higher bar for pleading a NYSEPA claim.

## XII.   **Plaintiff Is Granted Leave to Amend**

Federal Rule of Civil Procedure 15(a) provides that if a party has already "amend[ed] its pleading once as a matter of course," as Plaintiff has here, it "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). A court should "freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (internal citations and quotation marks omitted). The Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (internal citation omitted) (affirming denial of leave to amend).

Plaintiff already amended his complaint once following the instant motion to dismiss. *See* ECF Nos. 20, 22. In his opposition to the Motion, Plaintiff cursorily seeks leave to amend again if the Court finds any of his claims lacking, without specifying how he would cure the pleading deficiencies in the FAC. Opp. at 21. Accordingly, the Court has "firm footing to deny such leave." *Loc. 3599, NYC Dep't of Env't Prot. Tech. Pro. Emps. v. City of New York*, No. 23-CV-1035 (JGLC), 2024 WL 966077, at *16 (S.D.N.Y. Mar. 6, 2024) (collecting cases).

Nonetheless, the Court finds that amendment as set forth below would not be futile or in bad faith, nor would it cause undue delay or prejudice to Defendants given the early stage of the litigation. *Id.*; *see also Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*, No. 20-CV-10699 (MKV), 2021 WL 2075586, at *3 (S.D.N.Y. May 24, 2021) ("The Court also finds no undue delay by Plaintiff and prejudice to Defendant from permitting amendment at this early stage in the litigation. There is no undue delay as Plaintiff's request for leave was filed in response to Defendant's motion to dismiss."). Plaintiff is granted leave to amend to: (1) support his excessive workload claims by identifying similarly situated non-Black employees who did not receive an excessive workload; (2) support his hostile work environment claim by identifying the nature of the blackface images, and how often and in what manner he encountered them; (3) support his retaliation claims against Defendants Graham or Birmingham by identifying additional actions by Defendants Graham or Birmingham that deterred him from engaging in protected activity or by identifying a nexus between the existing allegations of retaliation by Defendants Graham or Birmingham and protected activity; and (4) support his NYSEPA claim by identifying similarly situated non-Black employees who received higher pay for engaging in the same work as Plaintiff. Additionally, Plaintiff is permitted to add factual details to his existing claims, and to reorganize his claims with greater clarity and precision, but he may not add any new causes of

action not included in the FAC or discussed herein, nor may he revive any of the causes of actions that he withdrew in his opposition to the instant Motion. Plaintiff is reminded that barebones or conclusory pleading will not pass muster under *Twombly*. To the extent the four pleading deficiencies above served as the basis for the Court to dismiss, such dismissal is **without prejudice**. In all other respects, the Court dismisses **with prejudice** the claims enumerated in the conclusion below.

For clarity, the Court notes that Plaintiff is <u>not</u> granted leave to amend with respect to the following claims (that there is no indication he has further facts to support) of which he was already on notice of pleading deficiencies at the time of the FAC: (1) discrimination claim based on failure to promote, *see* Mot. at 9; (2) section 1981 claim based on the denial of remote work request, *see id.* at 18; and (3) the constructive discharge claim, *see id.* at 13–14.

**CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Because Plaintiff voluntarily withdrew all claims against Defendant LeFay, his NYLL claims for unequal pay and unpaid work against all the Individual Defendants, and any purported Section 1981 claim for aiding and abetting, these claims are DISMISSED.

Plaintiff's claims against Shutterstock under Section 1981 for discrimination based upon failure to promote, excessive workload, denial of a remote work request, and constructive discharge are DISMISSED. Plaintiff's claims against Defendant Graham for discrimination and retaliation under Section 1981 are DISMISSED. Plaintiff's claim against Defendant Birmingham for retaliation under Section 1981 is DISMISSED.

Plaintiff's claims against Shutterstock under the NYCHRL and the NYSHRL for discrimination based upon a failure to promote, an excessive workload, and constructive

discharge are DISMISSED. Plaintiff's claims against Defendant Birmingham for direct retaliation and aiding and abetting retaliation under the NYCHRL and the NYSHRL are also DISMISSED. Finally, Plaintiff's claim against Shutterstock under the NYSEPA is DISMISSED.

In all other respects, the Motion is DENIED.

The deadline for Plaintiff to file a second amended complaint pursuant to Section XII of this Order is **July 8, 2024**.

The Clerk of Court is directed to terminate ECF No. 20.

Dated: June 10, 2024
New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge